7 W 217
26 SC ³ 65

## Duncan *against* Clark.

Seven daughters, some of whom were sole, others covert, and a grandson by an eighth daughter deceased, being the heirs, and as such entitled to the real estate of their father and grandfather, made partition thereof, by means of commissioners, appointed for that purpose by an agreement made in writing and executed by them under their hands and seals; directing thereby, also, the form and manner in which the partition was to be made, as also the mode whereby each one should have his or her allotment ascertained and appropriated; after which deeds of release and confirmation were to be executed by the rest to each for his or her purpart. Deeds of conveyance, by way of grant, bargain and sale after the partition was made, were executed by the other heirs, in which the husbands of such as were married joined, conveying in fee to the husbands respectively of two of the heirs their respective allotments; thus excluding the wives altogether. A deed of like nature was written and prepared to be executed by the other heirs, conveying to the husband alone the allotment drawn by his wife, a third heir; and after being executed by one of the other heirs and her husband, and by the latter handed over to the husband of another heir to be executed by the rest of them, without its being made to appear by any other or more evidence that it was so executed, or what became of it afterwards. Upon this the court below instructed the jury, that the evidence was not sufficient to warrant them in finding that the last conveyance was ever executed by the other heirs. *Held*, that such instruction was correct.

*Held* also, that the heirs, having taken possession of their respective allotments, according to the partition made by the commissioners, and having continued thereafter to hold the same, in severalty, the wife of the husband for whom the deed of conveyance was so prepared, but not executed by the rest of the heirs, immediately upon the death of her husband, she surviving him, became exclusively seised in severalty of the fee simple estate in her allotment, and dying so seised, it descended to her children, who were held entitled to recover the possession thereof from the purchasers of it at sheriff's sale under a judgment and execution against the representatives of her husband.

The act of 1797 limits the lien of debts due from a deceased debtor upon his real estate, to the term of seven years from the time of his death; when it shall cease, if the debt be payable within that period, unless suit shall be brought for the recovery of it; in which case if the suit be duly prosecuted to judgment within that time, the lien will be extended to twelve years from the death of the debtor; and when suit shall be commenced within the seven years, but judgment is not obtained until after that term shall have expired, the lien of the debt will be continued in such case till the end of five years from the date of the judgment: capable, however, of being continued indefinitely in either of the cases by a revival thereof every succeeding term of five years by *scire facias*.

THIS is a writ of error to the judges of the court of common pleas of *Franklin* county, sued out by John Duncan and Samuel Hughes to bring up the record of an action of ejectment, brought against them in the court below by Polly Clark, Harriet Clark, Lavinia Clark and Juliana Clark, for the recovery of the possession of about seventy acres of land, lying in the townships of Washing-

VII.—T 2

[Duncan v. Clark.]

ton and Guilford of said county. The plaintiffs below claimed as the heirs at law of their mother Margaret Clark, who in her lifetime became entitled to the land as part of the real estate of her father Nicholas Bittinger which, upon his decease, had descended to her and his other heirs; and, by a partition thereof made between them, had been allotted and set apart to her, as a part of her portion of the same. The partition was made in pursuance of the following agreement.

An article of agreement, made and entered into this 21st day of October, in the year of our Lord 1817, by and between Christina Duncan, George Rudy by Henry Hoke, his attorney, of Adams county, John Clark and Margaret his wife, of the borough of York, William Hamilton and Magdalena his wife, of Adams county, Samuel Lane and Barbara his wife, of the county of Franklin, Elizabeth Baum, Tobias Kepner and Sarah his wife, and Mary Harman, of Adams county, aforesaid, and all of the commonwealth of Pennsylvania:

Whereas, Nicholas Bittinger, late of Adams county deceased, departed this life, sometime in the year of our Lord 1804, intestate; seised and possessed of divers lands and tenements, situate and being in the counties of Adams and Franklin, in the commonwealth of Pennsylvania, and leaving at the time of his death the following children and grandchild his heirs at law and legal representatives, to wit, Christina Duncan intermarried with Seth Duncan, since deceased, George Rudy, son and heir at law of Catharine Rudy, who was the daughter of the said Nicholas Bittinger deceased, Margaret intermarried with John Clark, Magdalena intermarried with William Hamilton, Barbara intermarried with Samuel Lane, Elizabeth intermarried with Andrew Baum, since deceased, Susanna intermarried with Tobias Kepner, Mary intermarried with Henry Harman, since deceased, all of whom are parties to this agreement, and, claiming as heirs and representatives *of the said* Nicholas Bittinger, are all of full age; and, whereas, the several parties to these presents are desirous and willing to effect and complete a valuation and division of the lands and tenements of which the said Nicholas Bittinger died seised, as the same are set forth and described in this agreement. Respect being specially had to the equal division, thus, in quantity and value, as far as the same can be made and done, without injury to the parties concerned and interested; the parties to these presents have jointly and severally nominated, constituted and appointed, and by these presents do jointly and severally nominate, constitute and appoint John Byers, of Guilford township, and Peter Cook and Samuel Fisher, of Washington township, all of the county of Franklin, and John Hersh, George Himes and Sebastian Hafer, of Berwick township, of the county of Adams, of the commonwealth aforesaid, as commissioners for the valuation of the real estate of the said Nicholas Bittinger deceased, in the counties aforesaid, after the manner and form in which the same is directed to be

[Duncan v. Clark.]

made and done, that is to say, the said John Byers, Peter Cook and Samuel Fisher, of Franklin county, are hereby appointed commissioners to make valuation and division of a certain tract of land, situate and lying in the townships of Washington and Guilford, in the county of Franklin, and adjoining the lands of Daniel and Samuel Hughes and others; containing about the quantity of one thousand acres of land, more or less; being all the possessions of the said Nicholas Bittinger deceased in the townships aforesaid, except a messuage, or tenement, called Wile's farm, which is not included in this agreement, and not intended to be affected thereby, and the part in dispute with those claiming under Cunningham; and John Hersh, George Himes and Sebastian Hafer, of the county of Adams, are, by these presents, also appointed commissioners to make valuation of the real estate of which the said Nicholas Bittinger, deceased, died seised, in the county of Adams, viz. a lot or messuage of ground, containing about one acre of land, together with a house and tanyard thereon erected, also, one other lot or messuage of ground, on which a house formerly stood, which was since burned down, both lots or parcels of ground being situate and lying in the town of Abbotstown, in the county of Adams aforesaid; and the commissioners herein named, after viewing the premises which they are hereby appointed to divide and value, respectively, shall proceed to make valuation and division of the same lands, by dividing the same, when they will admit of division, without loss or injury, to the parties interested, as near as can be done; and, whereas, it is understood and agreed, by the parties to these presents, that the land and premises in Washington and Guilford townships shall only be divided into eight parts, or shares, being the number of the parties entitled, by the commissioners hereby named and appointed for the valuation and division of the said premises into eight parts, or shares only, as nearly equal in point of quantity and value as the same can, in their judgment and discretion, be made, without loss or injury to the persons entitled; and that they shall cause a survey thereof to be made, and each lot or share to be set out and laid off, by metes and bounds, with the value thereof annexed, and numbered on separate tickets, and put in a box sealed, and the commissioners afore mentioned shall, after valuation and division made, make a report of the proceedings, under their hands and seals, and shall file the same, as soon as convenient, with the prothonotary of the county of Franklin, in which the lands lie.

Now the parties to these presents, heirs and representatives of Nicholas Bittinger deceased, do mutually and separately covenant, each with the other, for themselves, their heirs and assigns, that, after division and valuation had and return thereof duly made, as herein specified, that the proceedings of the commissioners, of which this agreement shall be a part, shall be recorded in the orphan's court of the county in which the premises are situate, respectively, and so recorded shall be held and considered by the parties to the

[Duncan v. Clark.]

agreement, to be as good and valid in law as though such valuation and division had been done and made by inquisition, taken under a writ of partition, or under any other authority competent to complete a valuation and division of the lands and tenements, hereby intended to be valued and divided among the heirs and representatives of Nicholas Bittinger, late of Adams county, deceased; and all costs and charges attending the performance and execution of the several matters and things expressed and set forth in this agreement to be jointly borne and paid by the parties herein named; who severally reserve, for themselves and their assigns, the right to draw by lot the tickets out of the said box, so sealed and numbered, which said lot so numbered and drawn shall be the share of each heir entitled, and that they will, after division made, mutually execute deeds of release and confirmation, each to the other, for the several lots or parcels elected and drawn so as aforesaid, shall be taken by the parties. And for the true and just performance of all and singular the covenants and agreements herein set forth and contained, the parties to these presents severally bind themselves, each to the other, in the penal sum of 1000 dollars, to be forfeited by the person refusing to comply with this agreement. Witness our hands and seals, this 21st day of October, in the year of our Lord 1817.

Signed, sealed and delivered in presence of

NOTE. Before signing, the several interlineations made with the pen, and erasures also, in blacker ink, were made.

It is to be understood that the commissioners named in this agreement are to proceed to value and divide the lands, within mentioned, in six weeks from the date of this agreement, so that each heir may receive their respective share in the said lands; and the box with the numbers sealed up to be kept in the hands of said John Byers, and notice when the division is made, to be given Samuel Lane, who is to notify the heirs when to draw the lots, as aforesaid.

Witness present. } When Tobias Kepner and Susanna Kepner signed.
Samuel Lane,
John Clark.

John Clark, Jun. } In presence of Christiana Duncan.
Nicholas B. Lane.

John Clark, Jun. } In presence of Elizabeth Baum, and Mary Herman.
Juliana Lane.

Mary Clark, } In presence of John Clark, and Margaret Clark.
Harriet A. Clark.

Wm. Hamilton, } In presence of Henry Hoke.
Henry Hoke.

Nicholas B. Lane, } In presence of Samuel Lane and Rebecca Lane.
Elizabeth Lane.

CHRISTINA DUNCAN, [L. s.]
HENRY HOKE, [L. s.]
*Attorney for George Rudy.*
JOHN CLARK, [L. s.]
MARGARET CLARK, [L. s.]
WILLIAM HAMILTON, [L. s.]
*In presence of John Clark and Tobias Kepner.*
MAGDALENA HAMILTON, [L. s.]
SAMUEL LANE, [L. s.]
BARBARA LANE, [L. s.]
ELIZABETH BAUM, [L. s.]
TOBIAS KEPNER, [L. s.]
SUSANNA KEPNER, [L. s.]
MARY HARMAN, [L. s.]
*Witness,*
　　Samuel Lane,
　　Tobias Kepner.

WILLIAM HAMILTON, signed January 30th 1818.

[Duncan v. Clark.]

The land in controversy is a part of the one thousand acres mentioned in the agreement for partition, of which, as it appeared on the trial of the cause, Nicholas Bittinger died seised and intestate in 1804, leaving Margaret, the mother of the plaintiffs below, then the wife of John Clark, as one of his eight heirs at law mentioned in the agreement. In making the partition, Clark, the husband, on account of that portion of the land allotted thereby to his wife being more valuable than that which had been allotted to Samuel Lane in right of his wife, another heir of the said Nicholas Bittinger, gave his note to Lane for the payment of 350 dollars by way of owelty. Clark and his wife joined in making deeds of bargain and sale, conveying their interest in the allotments drawn by the wives of Samuel Lane and Tobias Kepner respectively in fee to their husbands, excluding the wives altogether. They also executed deeds conveying their interest in the other allotments to the other heirs, who according to the partition made had become entitled thereto. Clark and his wife took possession of their allotment, and on the 30th of September 1818 sold and conveyed, by deed of that date, fifty-two acres and fourteen perches, part thereof, to Duncan, one of the plaintiffs in error, for 2085 dollars. Evidence was also given, showing that a deed of conveyance, in fee, had been drawn for the purpose of being executed by the other heirs in favour of Clark alone, the husband, for his wife's allotment; that it had been executed by Lane and his wife, and handed by him over to William Hamilton, to be executed by him, his wife and the other heirs; but it did not appear that it ever was so executed, nor was any further account given of it.

The defendants below claimed the land in dispute under a judicial sale thereof, made upon a judgment obtained in November 1825 before a justice of the peace in York county against the administrators of Clark, the husband, who died, a resident of that county, on the 27th of December 1819. A transcript of this judgment was filed with the prothonotary of the same county and entered on the common pleas docket there by him, as of November term 1825. By an amicable *scire facias* entered the 6th of May 1830 to January term of that year, it was revived; upon which a *testatum fieri facias* was sued out to August term 1830, directed to the sheriff of Franklin county, who by virtue thereof seized and took in execution the land in contest, as the estate of Clark the husband; which, after being condemned to sale as such, was sold by the sheriff of the same county, under a *testatum venditioni exponas*, returnable to November term 1830, to the agent of the plaintiffs in error for the price of 800 dollars.

After the close of the evidence by both parties, the counsel for the plaintiffs below requested the court to instruct the jury as follows:

1. That the agreement of partition given in evidence was for partition, and partition only, among the parties to it according to their several rights and interests, and that no deed or deeds, in consum-

mation of that partition, could change the original rights of a *feme covert*.

2. That the estate of Mrs Clark in the lands could not be divested except by her own act, alienating that estate, in the mode pointed out by law.

3. That Mrs Clark, by joining in deeds to all the other parties for her right in their purparts, did *ipso facto* acquire the several interests in the part drawn by her without any further act to be done to perfect her title.

4. That admitting the fee simple in the lands to have been in John Clark at the time of his death, still the lands were not subject to sale and execution by the sheriff.

5. That the execution of a deed by the other parties to John Clark and its acceptance by him are not to be presumed.

The counsel for the defendants below then also requested the court to instruct the jury :

1. That if a deed was made by the other heirs of Bittinger to John Clark alone, it vested the title in John Clark to seven-eighths of the tract conveyed, which was liable to be sold on a judgment against his administrators, and that the sale in evidence was a good sale of that title.

2. That if the court shall be of opinion that the proceedings and deed, if one was made to John Clark, would not vest the title in him in fee simple, it would at least vest in him a proportionable part of the land in the ratio in which he had paid for it.

3. If the jury shall be of opinion that no deed was ever executed, defendants will still be entitled to hold the proportion of the land specified in point 2.

The president judge of the court, in reply to the points thus submitted, instructed the jury, as follows :

5th point on the part of the plaintiffs.

I am of opinion that there is not sufficient evidence in the case, taking all of it together, of the execution and delivery of a deed from the other heirs of N. Bittinger to John Clark, conveying the land to him in fee simple, and that therefore the foundation of the defence made for the defendants fails them altogether. This would itself settle the case in favour of the plaintiffs ; but as I am desirous that all the questions of law involved in the cause should go into the supreme court for final determination, I will proceed to answer the other points also.

1st and 2d points on the part of the plaintiff, and all the points on the part of the defendants :

I am of opinion that if there was a deed made by the other heirs of N. Bittinger, or any of them, to John Clark alone for this land, in pursuance of this agreement in partition, in fee simple, such deed would not divest his wife's title to the land, or any part of it, in fee simple, subject to his life estate. That such deed or deeds would not invest Clark with the title in fee to any part of the land, except

so far as he had paid money to produce equality of partition.   If he did so pay the 350 dollars to Lane on his note, the circumstance that he afterwards sold, and with his wife conveyed of the same land to Duncan what brought him more than 2000 dollars, extinguished all claim to the land in fee, or any part of it, accruing to him by the payment of the money to Lane.   This being the case, the land after Clark's death was not liable to be taken in execution and sold for his debts, and therefore no title passed by the sheriff's sale.

3d point on the part of the plaintiff.   The law is as stated in this point.

4th point on the part of the plaintiff.   The law is as stated in this point.

To which opinion of the court upon the points, the counsel for the defendant excepts, and prays the court to seal this bill of exceptions, which is done accordingly.

*M'Culloch* and *Washington*, for the plaintiffs in error.
*A. J. Findlay*, for the defendants in error.

The opinion of the Court was delivered by

Kennedy, J.—The first matter complained of as error is, that the court below withdrew from the jury the decision of the question of fact, whether the other heirs, beside Lane and wife, had executed the deed of conveyance that was drawn in favor of John Clark, the husband of Margaret, the mother of the plaintiffs below, conveying to him in fee that portion of the land allotted by the partition to his wife.   The court on this point instructed the jury that the evidence, in regard to it, was not sufficient to prove that such deed had been executed and delivered.   In this, we are decidedly of opinion, that the court was right.   There was no evidence given, which even tended, in the slightest degree, to show that such deed had ever been signed or sealed by any of the heirs, excepting Mrs Lane and her husband, who, it would seem from the evidence, did sign and seal a conveyance, prepared with a view to be signed, sealed and delivered by all the heirs, with the exception of Mrs Clark and her husband, the latter being the sole grantee named in it.   No one of the heirs appears to have ever signed it, beside Lane and his wife; nor was it ever delivered to Clark.   The evidence then going no further than this, it would have been error in the court below, to have left such a fact to the decision of the jury, as if evidence had been given which either went to prove it, or circumstances from which it might have been fairly inferred.

The court below being correct in their instruction to the jury on this point, it left the defendants below without even the shadow of a title on their part to the land.   The partition of the land, among the heirs, having been made and carried into execution according to the provisions of the agreement entered into between them for that purpose, and each one having taken possession of her allotment, it is

clear, that Mrs Clark became invested with the exclusive right to hold in severalty the fee simple estate in her allotment. Her husband acquired no other claim to it, than a right to it during his life by curtesy; unless it were a lien or equitable claim upon it for his 350 dollars paid to Lane. All interest or claim on his part to the land, excepting this, terminated with his life. His wife, after his death, became the absolute owner in fee of that portion of it, the part now in dispute, which remained unsold by her and her husband. The 350 dollars paid by the husband, in order to equalize the partition, whereby something more of the land was obtained than was coming to his wife as her portion of her father's real estate, were greatly more than repaid to him, by the sale of the fifty-two acres and fourteen perches, part of the land, sold and conveyed by him and his wife to Duncan, one of the defendants below; so that to the residue of the land, which is that now in contest here, he had not the least colour of claim, either in law or equity, which could endure beyond his life. The wife, under the operation of the partition, having acquired a right in severalty to the fee simple in her allotment, could not be divested of it, except by uniting with her husband in making a deed of conveyance for that purpose, acknowledged and certified in the manner and form prescribed by our acts of assembly passed in that behalf. This she did as to the fifty-two acres and fourteen perches of the land, but in respect to the residue, it is not even pretended, that she ever did. The plaintiffs below, being her heirs at law, were, therefore, clearly entitled to recover.

As this disposed of the whole case, it was, as the court below said, unnecessary to have advanced any opinion upon the second point, in which it is alleged that the court erred. This second point or error, complained of, arises out of the answer of the court to the fourth point submitted by the counsel for the plaintiffs below. By this fourth point, the counsel for the plaintiffs below requested the court to instruct the jury, "that admitting the fee simple in the lands to have been in John Clark at the time of his death, still the lands were not subject to sale and execution by the sheriff."

To this the court answered : "the law is as stated in this point." In the cases of Trevor v. Ellenberger, 2 *Penn. Rep.* 94, and Penn v. Hamilton, 2 *Watts* 53, it was virtually decided, that a debt owing by the testator, at his decease, sued for afterwards, and judgment had for it, against the executors within seven years, continued the lien of the debt upon the real estate of the testator, or deceased, for the space of twelve years from the time of his death, without being revived by *scire facias*; but if not revived within that period, the real estate becomes released from all liability to the payment of the debt : thus determining that under the act of 1797 it was not only necessary to sue for the debt within the seven years, when payable within that time, and to prosecute it to judgment, but after judgment should be obtained, likewise to prosecute the claim still further, with *due* diligence, so as to obtain execution of the judgment rendered for it,

[Duncan v. Clark.]

which is not to be extended beyond five years from the date of the judgment, without a revival by *scire facias*, when the judgment is obtained after the lapse of seven years from the death of the debtor. This is also to be regarded as carrying into effect the principles of both the cases of Trevor *v.* Ellenberger, and Penn *v.* Hamilton; and the principle of the former as explained by the chief justice in the latter. 2 *Watts* 60. It ought always to be borne in mind, that the judgment against the personal representatives creates no lien upon the real estate of the deceased debtor: it does not change the character of the debt in relation to the deceased's estate; it merely continues the lien, which arises by operation of law against the real estate of the debtor upon his dying, and would otherwise expire at the end of seven years from his death, according to the limitation contained in the act of 1797. But by an equitable application of the acts limiting the liens of judgments, which require a revival thereof by *scire facias* every five years, this court have decided that a judgment obtained against the executors or administrators of the debtor, must be revived, not, however, to continue the lien of the judgment, as none was created by it, but the lien of the debt, created by law, immediately upon the event of the debtor's death, anterior to any judgment being obtained for it. This lien will continue seven years, without suit or judgment, from the death of the debtor; and if a judgment be had for it at any time within that period, then the lien, by means thereof, will be extended five years beyond the seven years; making twelve in the whole; but in order to continue the lien beyond this period, it is requisite that a *scire facias* should be sued out for this purpose before the expiration thereof, otherwise the lien of the debt upon the real estate will cease at the end of the twelve years from the death of the debtor. When, however, the suit is commenced within the seven years, but judgment cannot be had in it until afterwards, the pending of the suit would seem to be sufficient to keep the lien alive; and the first term of five years would not commence until the rendition of the judgment; so that a revival of the judgment, within five years after its date, would preserve and continue the original lien of the debt for another period of five years. It is obvious, that in the first case, when the judgment is obtained within the seven years, the five years ought not to commence before the expiration of the latter period; for if it were to be held to commence from the date of the judgment, it would be placing the vigilant creditor in a worse condition than the negligent one; and would also be contrary to the express, as well as the plain import and meaning of the act of 1797, which terminates the lien only after a lapse of seven years from the death of the debtor. But if the creditor were to sue and obtain a judgment for his debt within the first year after the debtor's death, and the first term of five years were to be held to commence from the date of the judgment, his debt against the estate would cease to be a lien before the expiration of six years from the decease of the debtor. It is clear, therefore, that such a rule could

VII.—U

[Duncan v. Clark.]

not be adopted consistently with the limitation in the act, which never intended that the early commencement of a suit, and obtaining of judgment, should shorten the duration of the lien of the debt. The creditor has a lien allowed to him on the real estate of his debtor, for a period of seven years, without suit. It is, therefore, reasonable, that the effect of the judgment, though obtained in the course of the first year after the death of the debtor, should not commence its operation in keeping the lien alive, until the expiration of the seven years mentioned in the act, and then allow it to do so for the term of five years from that time.

Now it would appear from an application of these principles to the case before us, that the court below erred in directing and instructing the jury, that if Clark, the husband, had been the owner of the land in fee at the time of his decease, it would not have been liable to the payment of the debt at the time it was taken in execution and sold for it. He died on the 27th of December 1819, whereupon the debt would have become immediately a lien upon the land, had he been the owner of it in fee, and would have continued to be so for the space of seven years thereafter, that is, until the 27th of December 1826, according to the limitation contained in the act of 1797, without any suit being brought, or judgment obtained for it; but a judgment was obtained for it against the administrators of Clark in November 1825, before the seven years had run, which agreeably to the principles laid down above, and contained in the cases of Trevor *v.* Ellenberger and Penn *v.* Hamilton, would have extended and continued the lien down to December 1831, a year and more after the land was taken in execution and sold.

The evidence, however, did not raise this question, or render it necessary, in any way, for the court below to pass upon it: nor is it requisite that we should do it here; but to prevent what the court said from being considered the law in regard to it, I have thought it right to present the view which I have given of it. But as this question was not involved in the case, and as the court below decided correctly all that was ruled, the judgment must be affirmed.

Judgment affirmed.