### THOMAS GRIFFIN AND HUGH ERVIN v. ROBERT THOMPSON.

A marshal has no right to receive bank notes in discharge of an execution unless authorized to do so by the plaintiff.

If the marshal does receive such papers, the court, in the exercise of its power to correct the irregularities of its officer, will refuse a motion of the defendant to have satisfaction entered on the judgment, and refuse also to quash a second *fieri facias*.

UPON a certificate of division from the judges of the Circuit Court for the southern district of Mississippi.

This was a motion made by Thomas Griffin and Hugh Erwin to have satisfaction entered on an execution of *fieri facias*, which issued from the clerk's office of the court against them on the 4th day of June, 1840, in favour of Robert Thompson, for the sum of $1740 02, with interest thereon at the rate of 8 per cent. per annum, from the 7th day of November, 1839, until paid, together with costs. And also to quash an execution of *fieri facias* which issued against them,

in favour of said Thompson, on the same judgment, on the 6th day of November, 1841.

In support of this motion, the plaintiffs below read in evidence first, an execution of *fi. fa.* numbered 874, which was sued out of the court against Griffin in favour of Thompson on the 1st day of January, 1840, returnable on the 1st Monday of May ensuing, for the sum of $1740.02 and the costs, this being the amount of a judgment recovered in the court on the 7th day of November, 1839. Upon this execution was endorsed the return of the marshal, dated May the 4th, 1840, setting forth the levy of that process on the 25th of March, 1840, on certain subjects of property, the execution of a forthcoming bond by Griffin with Ervin as surety for the delivery of the property at the day and place of sale, and the forfeiture of the bond by the failure of the obligors to comply with its condition. Accompanying this return is a receipt in these words:

January 2d, 1840. Received on this execution one thousand dollars in post-notes of the Mississippi Union Bank.

Wm. M. Gwin, <em>Marshal,</em><br>By his deputy, Jno. F. Cook.

The plaintiffs next produced in evidence, their forfeited forthcoming bond with the execution of *fieri facias* sued thereon, in favour of Thompson on the 4th of June, 1840, returnable to the 1st Monday of November with the following endorsements and returns thereon, viz.:

### Endorsement on Fi. Fa.

No security of any kind is to be taken. This execution is entitled to a credit of one thousand dollars, paid 2d January, 1840, in Union post-notes. See marshal's return on *fi. fa.* No. 874, to May term, 1840.

(Signed) Wm. Burns, <em>Cl'k.</em>

### Marshal's Return.

Made on this case four hundred dollars, Nov. 3d, 1840. Received balance of this case, in full for costs, &c., say five hundred and fifteen $\frac{30}{100}$ dollars.

Wm. M. Gwin, <em>Marshal,</em><br>By W. L. Batto, <em>Dept.</em>

Nov. 3d, 1840.

They then read in support of their motion the execution of *fieri facias* sued forth against them in favour of Thompson, on the 6th day of November, 1841, which execution is the same that the plaintiff in the court below moved to quash. Upon it is the following endorsement:

x 2

Griffin et al. *v.* Thompson.

*Endorsement.*

This execution is entitled to a credit of $803 47, paid 3d November, 1840, on *fi. fa.* No. 451, to Nov. term, 1840. No security of any kind is to be taken for balance. W. H. BROWN, *Cl'k.*

Marshal's return, 'stayed by *supersedeas*,' received April 1, 1842.
A. MILLER, *Ml.*
By dept. J. S. GOOCH.

They then read in evidence to the court the following receipts which were proved to be signed by, and in the handwriting of, John F. Cook, who, at the date of said receipts, and before, was a deputy of William M. Gwin, marshal of the southern district of Mississippi, which receipts are in the words and figures following, to wit:

Received of Thomas Griffin the sum of eight hundred dollars, to be applied to part payment of an execution obtained *vs.* him at the Nov. term, 1839, of Circuit Court United States as security for I. Griffin, which amount I am to credit said execution with.

December 10th, 1839. W. M. GWIN, *Marshal,*
By his deputy, JNO. F. COOK.

" Received of Thomas Griffin the sum of two hundred dollars in Union Bank money, to be applied to a certain execution I hold *vs.* said Griffin, or I am to return the said money to the said Griffin.

Feb'y 17th, 1840. JNO. F. COOK.

The said sums of $800 and $200, mentioned in said receipts, constituting the $1000 in post-notes of the Mississippi Union Bank, returned by the marshal as received on 2d of January, 1840, on execution of *fieri facias* herein-before referred to, dated 1st January, 1840.

They also read in evidence to the court the following additional receipts, to wit:

Thompson.
*v.*
Griffin and Surety.
⎱ Circuit Court U. S. *fi. fa.* to Nov. term. 1840.

Received of Thomas Griffin in the above stated case, the sum of four-hundred dollars in Louisiana money.

Nov. 3d, 1840. W. M. GWIN, *Marshal,*
Per deputy, JNO. F. COOK.

Received of Thomas Griffin the sum of five hundred dollars, to

be applied to the payment of an execution, in the hands of the marshal, of Thompson v. Thomas Griffin and sureties.

Nov. 1840.                                    WM. M. GWIN, *Marshal,*

By his deputy JNO. F. COOK.

The said Robert Thompson then, in opposition to said motion, read in evidence to the court, the judgment pronounced at its November term, 1841, quashing so much of the return of the marshal made on the execution of *fieri facias* numbered 874, which issued on the 1st day of January, 1840, as stated that he had "received on said execution one thousand dollars in post notes of the Mississippi Union Bank," which judgment is in the words and figures following, to wit:

" Robert Thompson  }
            v.            }
  Thomas Griffin.  }

Motion by the plaintiff to quash that part of the marshal's return on *fi. fa.* No. 874, to May term, 1840, which is as follows: ' January 2d, 1840. Received on this execution one thousand dollars in post notes of the Mississippi Union Bank.'

"Motion sustained and said marshal's return on said *fi. fa.* quashed; and an alias *fi. fa.* ordered to May term, 1842."

The said Thompson then introduced Joseph Holt as a witness, who being sworn, stated that he was one of the plaintiff's attorneys of record, who obtained the said judgment of $1740 02 against said Thomas Griffin, at the November term, 1839, of the court; and that as the attorney of record of the said plaintiff, (Robert Thompson,) he had full authority to collect said judgment, and to control the executions which might issue thereon; that supposing the execution 'on said judgment when issued would come into the hands of the said "Jno. F. Cook," deputy marshal; he had a conversation with him a short time after the judgment was rendered, say some time in the month of November, 1839, in which he notified the said Cook distinctly, that good money would be required to be collected on said judgment, and that he must receive no other kind of money on the execution, when it should come into his hands. That he saw said Cook several times during the ensuing winter, but that he (Cook) never mentioned to him that he had made any collection on said judgment. That the first knowledge or intimation witness had of the receipt of the $1000 in post-notes of the Mississippi Union Bank,

Griffin et al. v. Thompson.

mentioned in the return of the said Cook on the execution as collect-
ed 2d January, 1840, was in the month of May, 1840, when going
into the marshal's office at Jackson, Mississippi, he found the said
execution had just been returned, with the receipt of the $1000, in
post-notes of the Mississippi Union Bank, endorsed thereon as afore-
said.

Witness at once refused to receive said post-notes from the marshal,
in part satisfaction of said execution, and has ever since refused, and
still refuses to receive them.   Witness further stated, that at the time
referred to, (May, 1840,) said post-notes had greatly depreciated in
value, and were not worth more than fifty cents to the dollar, and
that on the 17th of February, 1840, said post-notes were worth but
seventy-five cents to the dollar.   That he immediately entered a
motion to quash said return of the said deputy marshal, (Cook,) which
motion was sustained by the court at its November term, 1841.  Wit-
ness further stated that in a conversation he had held with said
Thomas Griffin, he (Griffin) had stated that the $800 mentioned in
said receipt, dated 10th December, 1839, and the $200 mentioned in
said receipt, dated 17th February, 1840, constituting together the
$1000 returned as made on 2d January, 1840, in "post-notes of the
Mississippi Union Bank," were paid by him to said John F. Cook,
deputy marshal as aforesaid, at times mentioned in the said receipts
respectively, in post-notes of the said Mississippi Union Bank.   It was
also in proof that, on the 10th day of December, 1839, the post-notes
of the Mississippi Union Bank were current in the state of Mississippi,
and were generally received by the sheriffs and marshal unless in-
structions to the contrary were given by plaintiffs or their attorneys.
It was also admitted that Griffin had no actual notice of the instruc-
tions given by the plaintiff's attorney in this case to said John F.
Cook, deputy marshal.   This was all the evidence offered either in
support or in opposition to the plaintiff's motion.   Whereupon on the
question whether satisfaction should be entered on said execution of
*fieri facias,* which was sued out on the 4th of June, 1840, in favour
of said Robert Thompson *v.* Thomas Griffin and Hugh Ervin for
the sum of $1740 02 with interest and costs as aforesaid; and also
on the question whether said execution of *fieri facias* which was sued
out against the said Griffin and Ervin on the 6th of November, 1841,
should be quashed, the judges were opposed in opinion, and the
questions were ordered to be certified to this court for decision.

The cause was argued by *Henderson* for Griffin, the defendant in

the original suit below, who had made the motion to have satisfaction entered on the judgment and to quash the second *fieri facias ;* and by *Harrison* and *Holt* for Thompson, the plaintiff below.

*Henderson,* for plaintiffs.

This was a motion in the court below to have satisfaction entered on a certain execution against the plaintiffs, in, the motion which issued against them on 4th June, 1840; and to have a subsequent execution quashed, which was issued on the same judgment, 6th Nov. 1841, and after said judgment was wholly satisfied, as the plaintiffs in the motion allege.

The first execution issued 1st January, 1840, for $1740 02, returnable to May term, 1840, which the marshal returned bonded, and with a credit in these words:

"January 2, 1840. Received on this execution one thousand dollars in post-notes of the Mississippi Union Bank."

After the return, viz., 4th June, 1840, the plaintiff sued out another execution, on which is endorsed by the clerk:

"This execution is entitled to a credit of one thousand dollars, paid 2d Jan'y, 1840, in Union post-notes."

This execution, returned to Nov. term, 1840, bears the marshal's endorsement, as follows:

"Made on this case four hundred dollars, Nov. 3, 1840. Rec'd balance of this case in full, for costs, &c., say five hundred and fifteen $\frac{30}{100}$ dollars. Nov. 3, 1840."

On 6th Nov. 1841, notwithstanding the previous satisfaction, so made and returned, another execution issued, credited only by $803 47, paid 3d November, 1840.

This constitutes the plaintiff's case in the motion, though some receipts and statements of account were presented, substantially in accordance with the foregoing returns of the marshal.

The defendant in the motion then exhibited a judgment of November term, 1841, of the court below, quashing so much of the marshal's return on the first execution, as denoted the receipt of $1000 Union post-notes, on 2d January, 1840, which judgment was entered, on the now defendant's motion, with the court's order for the execution, which subsequently issued, of 6th Nov. 1841.

The attorney of the plaintiff in the execution (the defendant in this

Vol. II.—32

motion) testified, that in November, 1839, he informed Cook, deputy marshal, that " good money" would be required.

That he knew nothing of the collection of the Union Bank notes till in May, 1840, and he then refused to receive them.

That in May, 1840, these notes were down to fifty cents in the dollar, and on 17th February, 1840, they were worth but seventy-five cents to the dollar.

· Record states it was in proof these notes were current 10th Dec. 1839, and that the defendants in the execution (plaintiff's in this motion) knew nothing of plaintiff's instruction to Cook, the deputy marshal.

On the case so presented, the court below divided in opinion, whether or not the execution of June 4, 1840, should be discharged as against the defendants therein; and that issued against them of November 6, 1841, quashed.

The sole question presented by the record is, Does the record in its proofs show the defendants, in the executions which issued on January 1, 1840, and June 4, 1840, lawfully paid and discharged them? For if so, the motion in the court below should be sustained.

· The record presents no case of the marshal assuming to settle a plaintiff's debt, without a writ authorizing him.

No case of a false return of the execution.

No case of a sheriff's assuming to discharge an execution by an offset of his own debt to the defendant in execution.

No case of taking promissory notes in discharge of an execution.

No case, in our opinion, of the sheriff having seized, or received any thing, in satisfaction of the execution, which the law did not authorize him, in his discretion, to receive in discharge of the writ. We make no question against the adjudged cases upon such and similar facts.

Nor shall we contend, if this motion was against the marshal to pay the plaintiff in execution in lawful coin, he could resist the motion, by showing he had received, in satisfaction of the execution of the defendant, copper coin, or unlegalized foreign coin, or bullion, or Treasury notes of the United States, or bank-notes of the states.

But the first question is, Are not state bank-notes a good tender, if not objected to? All our state courts uniformly decide they are, and so decided this court in 10 Wheat. Rep. 347; idem, Gwin v. Breedlove; decided at this term.

And bank-notes certainly constitute good and lawful payment, if

received; and the effect of such payment cannot, for cause of depreciation of the notes before redeemed, or the like, be avoided, and the original demand resorted to; as if promissory notes only had been received. All our state courts decide this principle continually, and so in England. Burroughs's Rep. 457.

These principles of tender and payment in bank-notes, as between debtor and creditor, have never been questioned. Copper coin, Treasury notes, and bank-notes, are the greater part of our currency; and as all society use them as currency, as the law recognises and legalizes their circulation, debtors may lawfully tender them in payment, and creditors may lawfully receive them, though not legally bound to do so.

The marshal is the plaintiff's agent, who, by his execution, may receive payment of the plaintiff's debt. He who may lawfully receive payment, may have lawful tender of payment made to him. What sophistry can plausibly maintain, that a tender of bank-notes to the principal, and not objected to, is a good tender; or payment in such notes to the principal is a good payment; and yet the like tender, and like payment, is not equally good when made to the agent?

But it is said in this case, the principle forbid the marshal to receive bank-notes. Admit the fact thus; it is also admitted in the record, the defendant in execution, who tendered and paid his bank-notes to the marshal, was ignorant of plaintiff's instruction; and we maintain this fact can only avail the plaintiff in execution as between himself and the marshal, who may have disregarded his instruction.

See decision, Gwin *v.* Breedlove.

But the marshal's return of satisfaction of the execution in bank-notes, in no state of case, as against the debtor in execution, can be treated as a nullity; and so I understand the intimation of the court in the case of Gwin *v.* Breedlove.

But the proof in this case is not, as in the case of Gwin *v.* Breedlove, that specie would be required of the officer; on the contrary, the inference is irresistibly otherwise. The testimony of plaintiff's attorney for the execution is, that in November, 1839, he told Cook, the deputy, that "good money would be required." And it is in proof also, that this bank paper was current—was "good"—as late as 10th December, 1840, and no proof it was depreciated before 17th February, 1840, being one and a half months after its payment; while the historical fact is, the bank did not suspend specie payments

till 22d March, 1840. The payment of these notes on execution was 2d January, 1840.

It is in proof, too, that much of the remaining amount due by this execution was paid in bank-notes of the state of Louisiana.

Why then has not the plaintiff in execution sought to have execution for the whole amount of the judgment? Why, but that he has regarded the Louisiana bank-notes "good money" within the meaning of his instructions.

We contend, too, the plaintiff adopted this payment of $1000 on the first execution of 1st January, 1840, by issuing his 2d execution, of 4th June, 1840, with a credit endorsed of the $1000 previously paid. The attorney proves he knew the payment of this $1000 in May, 1840; and in June following he issued his second execution, adopting the payment by way of credit.

This was after he had told the sheriff he would not receive it, and the legal presumption must be, he 1 ad changed his purpose, and that the clerk but obeyed his instructions in proceeding to collect the remainder by a further execution.

This court, as matter of evidence, are bound to regard this act as *prima facie* the act of the party, and a subsequent ratification of the previous payment. In conformity with this legal aspect of the proof, the balance due is returned, fully satisfied on the 2d execution, 3d November, 1840. One year afterwards, November term, 1841, a motion was made and sustained, not against the marshal, but *ex parte* against Griffin, to eradicate and annul to his prejudice a payment made by him twenty-two months before on executions returned finally satisfied one year before. Griffin is not shown to have had any notice of that motion, and is first admonished in April, 1842, by another execution, that his payments were unsatisfactory to the plaintiff. If then the rule of law was, as the plaintiff in execution insists, viz.: that a defendant in execution can make no safe payment of the execution to the sheriff in bank-notes, though the sheriff be content to receive them, unless the plaintiff shall approve such payment as a discharge of the defendant; yet the rigour of such a rule should, in common and equal justice, require the plaintiff to notify his objection to the defendant, so soon at least as the return of the execution shall advise the plaintiff of the manner of its payment. Here the plaintiff slept upon his collection of the defendant, implying his approval, (if such approval as to the defendant be necessary,) without notice to the defendant, of any exception for nearly two years after execution,

evidencing the objectionable payment was returned; and the plaintiff admits he knew the fact. Must defendants in execution, though not required by the sheriff, always pay in specie, or be subject to traps of this sort for ever after, or how long after?

We consider this case is not governed in any degree by the process act of Congress, of May 19, 1828. The motion in this case now pending, and the motion and judgment therein rendered in the court below, to quash the marshal's return on the execution of January 1st, 1840, are predicated on no statute of Mississippi, nor in conformity to any established rule of proceedings, or of decisions. They are motions of first impression pursued upon general common law principles. In this view of the subject, I notice the case in 5 Howard, 624. The facts in that case present no proper analogy to this. There the sheriff was also the defendant. Hence, beside other inconsistencies of his case, he could not avail himself of our position that, as defendant, he paid the sheriff, ignorant that the plaintiff entertained objections to the currency in which payment was made. He, in fact, could not pay himself. It is only by this explanation of the case that the decision can be sustained. The language of the court, then, that "the return was not a legal return, and the plaintiff was not bound by it, unless he had agreed to receive such money or notes in payment," is language only properly predicable of a controversy between the plaintiff and the sheriff, or as in that case against the defendant too, he being the sheriff.

This court, in the case of Gwin v. Breedlove, in referring to the above case in 5 Howard, are not understood to mean more by the reference than to show the case not then applicable as a precedent; while it is submitted, as a fair conclusion, whether the principles adopted in the case of Gwin v. Breedlove do not go to show, this court would not extend the decision of that case beyond its peculiar facts.

This court, in Gwin v. Breedlove, again declare, as in 10 Wheat., that payment in bank-notes is good, unless objected to. And they apply the declaration of this rule in a case where payment was to the marshal in bank-notes, on execution, where it was in proof that, as between the marshal and plaintiff in execution, he had been forbidden to receive bank-notes; and the integrity of the rule must come to this, or it is no rule as to payments made on execution.

Such payment, received without objection by the sheriff, (who undoubtedly has the right to receive payment,) must have some re-

Y

Griffin et al. *v.* Thompson.

cognition in law, or it is a nullity. And if such payment is a nullity, it is so, whatever the form of return. A payment, therefore, of an execution in bank-notes, with a return "satisfied," will, of course, not prevent the plaintiff from pursuing the defendant with further executions, if he can show that such payment was made in bank-notes; for such payment, if good at all, is good for itself, and not made good or bad according as the sheriff may report the facts in his return. If it can ever be good, it is only so because it is a discharge lawfully made of the defendant's debt.

The reasoning of the court in Gwin *v.* Breedlove, we think, shows that such payment is a good and valid payment, and discharges the debtor in execution, if received without objection by the sheriff; and that such payment, though not binding the plaintiff in his demand against the sheriff, does bar him from further process against the defendant.

The rule of law is, that whatever the sheriff may lawfully take in discharge of an execution, must bar the plaintiff from further execution *vs.* the defendant, though plaintiff get nothing from the sheriff. 12 T. R. 207; 4 Mass. R. 403; 7 T. R. 428; 2 Lord R. 1072.

When a sheriff seizes goods to satisfy an execution, he cannot compel the plaintiff to receive the goods or property in kind, (except in cases of extent;) and though he waste the goods, the defendant is discharged. Either plaintiff or defendant in execution may controvert, with the sheriff, the truth of his return.

The sheriff is estopped by his own return. The sheriff cannot be heard to testify in disproof of his own return. 3 Howard, 68.

And, *quære*—Is not the rule universal, that the plaintiff, as to the defendant in execution, is bound and precluded by sheriff's return?

Now, it is in proof, by return on the second execution, of 4th June, 1840, that the marshal received $515 30, as balance in full of debt and cost. Whilst this remains true and uncontradicted, what pretext has the plaintiff for further execution against the defendant? If the balance of the case, in full, for costs and all, have been received by the marshal on the execution, what right has the plaintiff further against the defendant?

And this execution and its return have not been complained of, have not been quashed, or in any way set aside. If it stands, therefore, for any evidence, it is evidence, full and complete, to discharge the defendant, as sought for by his motion in this case.

*Harrison* and *Holt* for Thompson.

The motion in this case was on behalf of defendant and sureties, to have satisfaction entered on the judgment, and the last execution of *fi. fa.* which issued, quashed. The plaintiff resists the motion on several grounds. As to the $800 for which a receipt of the deputy marshal (Cook) was produced, dated in November or early in December, 1839, it is insisted that this sum cannot be taken in part discharge of the execution, because it was collected before the execution issued, and of course without warrant of law. The officer derived his power solely from the process, and acting before its existence, his act was unofficial, could not be obligatory on the principal marshal and sureties, or on the plaintiff. The following authorities are full to the point that money collected by an officer after the return day of an execution is no satisfaction of it. 4 Rand. 336; 1 Bibb. 608; 5 Littel, 19; 2 J. J. Marshall, 29, 30; 5 Howard, 246. So in 3 Stewart and Porter, 385—388, it was held that the receipt of money by an officer before an execution issued, was no satisfaction of the *fi. fa.* which afterwards came into his hands.

But it is further urged that neither the $800 received in 1839, nor the $200 received in February, 1840, can be taken in part payment of the execution, because these sums were collected, not in money, but in depreciated post-notes of the Mississippi Union Bank, not only without the assent of the plaintiff, but in direct violation of the instructions of his attorneys.

The command of the process to the officer, was that he should cause to be made so many dollars, which in legal estimation are gold or silver dollars—the constitutional coin of the United States. The special authority thus given, being matter of law, of which all concerned were bound to take notice, could not be departed from to plaintiff's prejudice, without his assent expressed or implied—neither of which is shown or alleged. This question has been settled repeatedly, by tribunals of the highest respectability. 4 Howard, 404; 5 Howard, 246, 621—624; 9 Johns. 261, 262; 1 Cowen, 46; 4 Cowen, 553; 2 J. J. Marshall, 70, 71; 2 N. Carolina Rep. 529; Dudley's Law and Equity R. 356; Martin's L. R. N. S. 205.

Inasmuch as the execution process, and the forms of returns upon it as existing in Mississippi are the creatures of the local laws of that state, it is believed that the decisions of her Supreme Court cited, should be conclusive of the questions involved.

Mr. Justice DANIEL delivered the opinion of the court.

This court is unable to perceive upon what principle of law either of the objects sought by the motion of the plaintiffs in the Circuit Court could have been accorded to them. It cannot be questioned that the defendant in that motion was entitled to the full benefit and operation of his execution, and these were to cause to be made for him of the goods and chattels, lands and tenements, of his debtor, the sum of $1740 02 of lawful money of the United States. With his claim thus solemnly ascertained of record, we are aware of no authority, from any source, which can compel him to commute it, or to receive in satisfaction thereof any other thing which he shall not voluntarily elect. But least of all should such an authority be recognised in a quarter more fruitful than any other of abuses in its exercise; for instance, from the will either of the debtor, or the officer whose position would enable him in some degree to practise on both creditor and debtor To permit either the debtor or the officer to impose upon the creditor the receipt of depreciated paper in payment, would be to permit not merely a repeal of the judgment, but a violation, a virtual abrogation indeed, of the contract on which it was founded; for none can fail to perceive the thousand fraudulent devices for profit or favour which the toleration of such a practice would naturally call into action to defeat the rights of creditors. The courts of justice might thus be made to subserve only the purposes of dishonesty, and be transformed into engines of monstrous wrong. It has been argued in support of this motion, that bank-notes constitute good and lawful payment if received; that as the law recognises their circulation, debtors may lawfully tender them in payment, and creditors may lawfully receive them though not legally bound to do so. From these postulates it is then attempted to draw the following conclusions: 1. That the marshal is the plaintiff's agent, who by the execution may receive the plaintiff's debt. 2. That he who may lawfully receive payment, may have a lawful tender of payment made to him. 3. That if a tender or payment of bank-notes to the principal, not by him objected to, is a good tender or payment, the like tender or payment to the agent is equally good. This argument, to say the least of it, is wholly untenable. 'Tis undoubtedly true that the creditor may receive either bank-notes or blank paper in satisfaction of his debt, for the reason that his power over that debt is supreme, and he may release it without payment of any kind, if he think proper. But the fallacy of the argument here

consists in totally misconceiving the situation and functions of the marshal.   He is properly the officer of the law rather than the agent of the parties, and is bound to fulfil the behests of the law; and this too without special instruction or admonition from any person.   If, then, when commanded to levy a sum of money, he make a return that he has not done this, but has of his own mere will substituted for money depreciated bank-notes, his return is an admission, on oath, that he has both disobeyed his orders and transcended his powers, for legally he has no powers save those he derives from the precept he is ordered to obey.   Can it be doubted that upon application from those whose interests are involved in the performance of his duties by the marshal, it is the right and the duty of the court in such a case to correct the irregularities of its officer, and to compel him to perform his duty?   There is inherent in every court a power to supervise the conduct of its officers, and the e:ecution of its judgments and process.   Without this power, courts would be wholly impotent and useless.   The returns of the marshal in this case upon the final process in his hands, showing the receipt by him of depreciated bank-paper in satisfaction of that process which ordered him to collect money, are held to be departures from the performance of his duty as plainly enjoined by the process itself, are deemed therefore illegal and void, and ought upon the application of the party injured thereby to have been set aside and annulled by the court. In conformity with the principles herein sanctioned, we therefore order it to be certified to the judges of the Circuit Court for the southern district of Mississippi, that satisfaction should not be entered on the execution of *fieri facias* which was sued out in this case on the 4th of June, 1840, in favour of the said Robert Thompson *v.* the said Thomas Griffin and Hugh Ervin, for the sum of $1740 02 with interest and costs; and farther, that the execution of *fi. fa.*, which was sued out against the said Thomas Griffin and Hugh Ervin on the sixth day of November, 1841, should not be quashed; and that the motion of the plaintiff in the Circuit Court should be overruled

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion agreeably to the act of Congress

in such case made and provided, and was argued by counsel. On consideration whereof, It is the opinion of this court, that satisfaction should not be entered on the execution of *fieri facias*, which was sued out in this case on the 4th of June, 1840, in favour of the said Robert Thompson against the said Thomas Griffin and Hugh Ervin for the sum of $1740 02, with interest and costs: and farther, that the execution of *fi. fa.*, which was sued out against the said Thomas Griffin and Hugh Ervin on the 6th day of November, 1841, should not be quashed: and that the motion of the plaintiff in the Circuit Court should be overruled. Whereupon it is now here ordered and adjudged that it be so certified to the said Circuit Court.