6   239
21*1000
24* 621

SARAH KERSHAW AND OTHERS, APPELLANTS, v.
FRANK H. DYER AND ANOTHER, RESPONDENTS.

MORTGAGE.—JUDICIAL SALE.—PURCHASERS REFUSAL.—RESALE.—
When under decree of foreclosure and sale the U. S. marshal ex-
posed two pieces of property for sale for one of which $4,500 and
for the other $1,725 were bid, but neither purchaser paid the
money bid, and thereupon sale was set aside and resale ordered,
whereupon at second sale, the piece of property was struck of to
P., for $4,000, who said he would pay the money to U. S. mar-
shal, and thereupon the judgment debtors tendered the balance
due on the order of sale, $2,229.30, and the U. S. marshal gave
them a receipt in full for all deficiency and did not sell the sec-
ond piece of property.      Thereupon the judgment debtors took
this receipt and obtained a loan by mortgage of $3,000 upon the
second piece of property. Then P. refused to pay his bid, and
then the court made another order of sale of the two pieces of
property and exposed the first piece for sale, and it was sold for
$2,300.    This the marshal reported to the court with the
$2,229.30 paid by the judgment debtor left $1,940 still due on the
mortgage. Thereupon the court ordered the second piece of
property sold for this deficiency, whereupon the judgment debt-
ors and mortgagees sued out a writ of injunction against the mar-
shal restraining the sale; held upon motion to dissolve the in-
junction, that the bill of the plaintiffs showed no equity, and
that the judgment creditor was not bound by the marshal's re-
ceipt, but could have a resale of the second lot.

ID.—ID.—ID.—STATUTORY CONSTRUCTION.—Under section 3437
Compiled Laws, 1888, providing that if purchaser refuse to pay,
the officer may again sell the property and sue the bidder for
any loss that may occur; if the purchaser refuse to pay the prop-
erty may again be sold, and if a deficiency exist may sue the re-
fusing bidder, but this section does not mean that if two pieces
of property are ordered sold, and one is sold, and then the judg-
ment debtor pays the balance due and the other piece of prop-
erty is not sold, and thereupon the first piece is again sold, and
a deficiency remains that the remedy of the judgment debtor is
against the refusing purchaser for a deficiency.

ID.—ID.—RIGHTS OF JUDGMENT CREDITOR.—Where property is
ordered sold to satisfy the lien of the mortgage the judgment
debtor has the right to have the full amount of his lien at-
tempted to be realized in money, until the property is exhausted.
Reversing the first opinion given below.

APPEAL from an order of the district court of the first district dissolving an injunction. The opinion states the facts.

*Mr. A. R. Heywood* and *Messrs. Emerson & Allison,* for the appellant.

Cited Boone on Mortgages, sec. 156; *McMillan* v. *Richards*, 9 Cal., 409, *Stuart* v. *Gay*, 127 U. S., 518; *Camden* v. *Mayhew*, 129 U. S., 73.

*Mr. P. L. Williams* and *W. H. Dickson* for the respondent.

The following opinion was rendered at the June term, 1889.

JUDD, J.:

The facts of this case necessary to be stated are that Sarah Kershaw and her husband executed to John Kelly and his wife a mortgage upon two parcels or lots of land in the city of Ogden, dated August 3, 1883, to secure the payment of the sum of $4,000. Default having been made in the payment, Kelly and wife brought their action in the district court at Ogden to foreclose the mortgage, sell the land, and collect the debt. Such proceedings were had in that case as resulted July 23, 1886, in a decree of foreclosure, and the real estate ordered to be sold. The order of the court directing the sale is as follows: "That all and singular the mortgaged premises mentioned in the complaint, and hereinafter described, or so much thereof as may be sufficient to raise the amount due to the plaintiff for the principal and interest and costs and expenses of sale, be sold at public vendue by the United States marshal for the territory of Utah, after public notice thereof according to the course and practice of the court and law relative to sales under execution." Armed with this order, the marshal, by his deputy, on the eighteenth of January, 1888, exposed the property for sale as directed, when one piece was struck off to C. S. Varian at the price of $4,500, and the other to Charles Woodmansee at the price of $1,725.

The whole debt and costs amounted to about $4,900. The marshal made return of his action to the court, in which he stated the above facts, and also said in his return that Varian had not paid his bid, and he adds: "Being since informed that the validity of said sale is questioned, and that I am ordered to make return, I have not accepted the money of Woodmansee, or his bid, but report my proceedings as far as I have gone, and now await the further instructions of the court in the premises." On February 17, 1888, the court made an order setting aside this sale, for the reason that the "purchaser refused to make payment of his bid and purchase there made." Then the order proceeds to direct the marshal to resell the property, as provided for in section 578, Civil Proc. Act 1884. The section of the Code referred to is as follows: "If a purchaser refuse to pay the amount bid by him for the property struck off to him at a sale under execution, the officer may again sell the property at any time to the highest bidder, and if any loss be occasioned thereby the officer may recover the amount of such loss, with costs, from the bidders so refusing, in any court of competent jurisdiction." The facts further show that the order of the court above alluded to expressly states that "this order and judgment, however are not to prejudice the rights of any party to said motion," meaning the motion for a resale, "or their right to bring or prosecute any further action to vindicate their several rights or the recovery of damages of any party to said motion." Another order of sale was issued to the marshal, and on the eleventh day of April, 1888, he again exposed one piece of the land to sale, when D. H. Peery, Esq., bid the same off at the price of $4,000. The return then recites "that the said Peery did not have on his person the said amount of $4,000, but agreed then and there to settle the said last-mentioned price as soon as we could meet at the First National Bank of Ogden City, Utah; and before I had further proceeded with the sale the defendants, Andrew J. and Sarah Kershaw, requested me not to sell the remaining parcel of land, but tendered me the sum of $2,229.39, the same being the difference between the said bid of D. H. Peery and

the full amount due on the order of sale. I accepted the last-mentioned sum from Andrew J. and Sarah Kershaw before the said Peery refused to pay the amount of his bid, and I still retain the same in my possession, for the reason that John J. and Margaret Kelly have declined to receive a part of the proceeds of said sale." "But," adds the return, "Peery refused to pay his bid." At this sale the marshal executed to the Kershaws the following receipt: "Ogden City, Utah, April, 1888. Received of Andrew J. Kershaw in full of all demands as deficiency in the cause where John J. Kelly and wife are plaintiffs and Andrew J. Kershaw and Sarah Kershaw are defendants. FRANK H. DYER, U. S. Marshal. By E. W. EXUM, Deputy." May 21, 1888, the return of the marshal last-mentioned being brought into court, it was upon motion of W. H. Dickson, Esq., attorney, moved that another order of sale issue to resell the land heretofore mentioned as sold to Peery, as well as that sold to Woodmansee, and September 28, 1888, the marshal in pursuance of an order so issued to him, sold the lot that had been theretofore sold to Varian for $4,500, and to Peery for $4,000, to James L. Dee and Charles Woodmansee for $2,300; and said sum was paid to C. S. Varian for the plaintiff. The return then states that he (the marshal) has in his · hands the sum of $2,229.39, being the amount paid him by the Kershaws, and that there is still due on the decree $1,940. On the tenth day of November, 1888, another order of sale was made by the court to sell the remaining lot which had been theretofore sold to Woodmansee to pay the deficiency of $1,940 and costs of the sale. At this point it should be stated that Sarah Kershaw exhibited to the other two plaintiffs, Hartog and Huss, the receipt heretofore set out, given by the marshal to the Kershaws, and requested a loan of $3,000 upon the lot now sought to be sold, and the money was advanced and a mortgage executed to said parties upon the lot to secure the loan. The bill in this cause is now filed by Sarah Kershaw, and Hartog & Huss, setting forth the facts recited, and asking that said sale be perpetually enjoined. An answer was filed by the defendant, the marshal of Utah, which substantially admitted the

facts as stated, and thereupon a motion was made to dissolve the injunction. This motion, being heard upon the bill and answer, as well as upon the record in the case of the Kellys v. the Kershaws, was sustained, and the injunction dissolved. From this order, as the statute allows, the plaintiffs prosecute their appeal. This simple statement of facts tells its own story.

Both the judgment creditors and the defendant marshal have not only proceeded in utter disregard of the rights of the judgment debtors, but in plain violation of the law. In the beginning one piece of property sold for $4,500. This was within about $400 of enough to fully satisfy the debt and costs. The sale is summarily set aside upon the suggestion, merely, that it was for some reasons, not at all made to appear, invalid. Another sale was made for $4,000. This in its turn was set aside for the simple reason that the purchaser "refused to pay his bid." The same piece of property is again sold for about $2,300, and no effort made to make either of the purchasers responsible upon their bids. The judgment debtors, after Peery's bid, paid the balance of the debt in full, and took a receipt, and upon the faith of this the lot not sold is mortgaged to Hartog & Huss, to whom the receipt was shown as evidence of the payment of the former lien. The case of *Camden* v. *Mayhew*, reported in 129 U. S. 73, 9 Sup. Ct. Rep. 246, is authority for the statement that the judgment creditors and the deputy marshal not only had the authority to resell the property at the cost of the purchaser, but that it was their duty to do so. That case holds, when a purchaser at a sale of real estate under a decree of a court of equity refuses without cause to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had ; or he may be proceeded against in the same suit by rule or in any other mode devised by the court which will enable him to meet the issue as to his liability in order to make him liable for deficiency resulting from a resale caused by his refusal to make his bid good. There is no doubting the rule of chancery practice that a purchaser at a sale made under a decree of a court of equity becomes a *quasi* party

to the case in which the sale is made.   The court may then
proceed against him as if he were a party, by any of the
ordinary proceedings known to the practice of the court,
to compel him to make good his bid.   The general rule of
practice is for the officer making the sale to report the
sale, together with the fact of the purchaser's refusal to
comply with his bid, to the court; and then the sale is
confirmed, and the purchaser is notified that the resale will
be made at his risk as to deficiency and at his cost.   But
under the authority of *Camden* v. *Mayhew, ut supra,* it is
not necessary to confirm the sale before proceeding against
the purchaser.   The statute quoted in this opinion from
the Code of Practice of 1884 is nothing but a simple recog-
nition and re-enactment of the practice as stated in the
case of *Camden* v. *Mayhew,* before cited.   It was the duty
of the marshal to have resold the property as the statute
directs, at the risk and cost of the purchaser, and it was the
duty of the judgment plaintiffs to have seen that this was
done.   The facts of this case demonstrate the rightfulness
of the rule ; had the law been regarded the money would
long ago have been collected, and the rights of all parties
preserved.   The result is that the decree below, dissolving
the injunction, is erroneous, and the same will be reversed
and the cause remanded to the court below, with directions
to make the injunction perpetual.   The judgment plain-
tiffs, the Kellys and the marshal, will be allowed to take
such proceedings against the purchasers, or any of them,
as they may be advised the law warrants.   The defendants
will pay the costs of this court and the court below, with
leave to proceed against the Kellys for its repayment.

ZANE, C. J., and ANDERSON J., concurred.

At the June term of the court, a rehearing was granted
and after the rehearing the following opinion was de-
livered :

ZANE, C. J.:

It appears from the record in this case that July 23, 1886,
John J. and Margaret Kelly obtained a decree against An-
drew J. and Sarah Kershaw foreclosing a mortgage on two

pieces of real estate of the latter, to secure a debt due from them to the former; that in pursuance of the decree, the marshal on January 18, 1888, exposed the property for sale, and that one piece was struck off to C. S. Varian at the price of $4,500, and the other to Charles Woodmansee for $1,725 ; that the marshal reported these facts to the court, and also that Varian had refused to pay his bid, and that the validity of the sale was questioned, and that he did not accept the money on Woodmansee's bid ; and it also appears that on February 17, 1888, the court set aside this sale for the reason that the purchaser refused to make payment, and ordered the marshal to resell the property. It also appears from the record that on April 11, 1888, the officer again exposed for sale the piece of land that had been struck off to Varian, and that one D. H. Peery bid therefor $4,000, and that the officer reported these facts to the court, and, also, that Peery had said he would pay the amount of his bid as soon as the parties could meet at the First National Bank; that the Kershaws then tendered the sum of $2,229.30, the difference between Peery's bid and the amount due on the decree with costs, which he took, and did not offer the other lot for sale, and executed and delivered to the Kershaws a receipt in the following words: "Ogden City, Utah, April, 1888. Received of Andrew J. Kershaw in full of all demands as deficiency in the case wherein John J. Kelly and wife are plaintiffs, and Andrew J. Kershaw and Sarah Kershaw are defendants. [Signed] FRANK H. DYER, U. S. Marshal. By E. W. EXUM, Deputy." It also appears from the record that the Kershaws exhibited this receipt to the appellants Hartog and Huss, and that they loaned the Kershaws $3,000, and took a mortgage to secure the payment of the same on the lot not offered for sale. It also appears that Peery refused to pay the amount bid by him, and, upon that fact being reported, the court made another order for the sale of the lots, and in pursuance thereof, on September 28, 1888, the marshal again exposed for sale the lot that had been struck off to Peery, and that James L. Dee and Charles Woodmansee bid therefor the sum of $2,300, and the same was paid over to the plaintiff in the decree. This sale and pay-

ment the marshal reported to the court and also the fact
that he had in his hands the $2,229.39 paid to him by the
Kershaws, and that including this there still remained un-
paid on the decree the sum of $1,940. And on November
10, 1888, the court ordered the sale of the other lot to pay
this balance. But before this sale was made an injunction
was obtained by the appellants restraining the marshal
from making it. And upon answer filed a motion to dis-
solve, which was heard, and the facts appearing as above,
the court granted the motion, and the injunction was dis-
solved. From this decree the appellants have prosecuted
this appeal. The appellants insist that the Peery bid, and
the payment to the officer of the difference between that
and the amount of the decree, satisfied the lien of the de-
cree against the lot last ordered to be sold; that the only
remaining remedy for the benefit of the respondents was
to resell the lot bid off by Peery, and to sue him for the
difference, if any, between his bid and the amount realized
on such resale; and that, therefore, the last order of the
court to sell the other lot to satisfy the deficiency was a
nullity, and that the officer for that reason had no author-
ity to make the sale under it.

The appellants rely upon section 3437 of the territorial
statute : "If a purchaser refuses to pay the amount bid
by him for the property struck off to him at a sale under
the execution, the officer may again sell the property at
any time to the highest bidder, and if any loss be oc-
casioned thereby the officer may recover the amount of
such loss, with costs, from the bidder so refusing in any
court of competent jurisdiction." 2 Comp. Laws Utah,
1888. Under this law if the bidder refuses to pay the
amount of his offer, the officer may expose the property for
sale again, and sell it to the highest bidder, and if a loss
occurs he is also authorized by an action to recover that
amount, with costs, from the first bidder. Section 3439 of
the same compilation provides that the officer shall not be
liable for more than the amount of the second bid, and the
sum collected from the purchaser refusing to pay. If the
position of the appellant is right, and no other property
can be subjected to sale when the first bid equals the

amount of the judgment, and payment is not made, the
creditor might lose the difference when the defendant in
the execution, or order, has property to pay him; for the
first bidder might be insolvent, or facts might be made to
appear on the trial constituting a defense.    If a suit should
be instituted against Peery for the loss in this case, and he
should make a successful defense, or he should be found
to be insolvent, then the respondents would lose their $1,-
940, though the other piece of land in the mortgage and
decree may be of sufficient value to pay it.    The law re-
quires the officer to sell the property to the highest bid-
der.    And that bid might exceed the amount due on the
execution, and the second bid might be sufficient to satisfy
the judgment.    In that case the plaintiff would have no
interest in the difference ; yet the loss would be the same
to the defendant, and the officer would be authorized, if
the sale was fair, to collect it by suit for the benefit of the
defendant.    When the first bidder fails to pay, and the re-
sale is less, the difference is the defendant's loss.    If the
proceeds of the last sale are not sufficient to pay the exe-
cution, so much of the difference collected will be paid by
the officer for the defendant on the plaintiff's judgment,
and the remainder, if any, will be paid to the defendant.
Neither the plaintiff nor the defendant has the right to
sue for the loss, under the Utah statutes.    The officer's
authority and instructions in making the sale are in the
law.    He does not receive them from the plaintiff or the
defendant.    It is because the defendant refuses to pay, and
the plaintiff is without authority to compel him to do so,
that the government through its officer takes the defend-
ant's property, and sells it as the government directs by
its law, and pays the proceeds to the parties as their rights
appear.

The case of *Gaskell* v. *Morris* was an action to recover
the difference when the first bidder failed to pay, and the
second sale was for less.    In deciding the case the court
said:    "The fifth error is an exception to the instructions
given by the court to the jury that a suit brought for the
purpose of the present case might be maintained by the
sheriff in his own name.    We are decidedly of opinion that

the court was right on this point. It is in accordance with the opinion of this court as expressed in *Adams* v. *Adams*, 4 Watts, 160, where it was not only held that such action might be maintained by the sheriff who made the sale, but that it could not be maintained by any other person." The opinion concludes: "And seeing that no reason whatever has been given why the defendant below did not comply with his contract for the purchase, it is clear, therefore, that by his failure to do so he has caused a loss equal to this difference to the owner of the estate, and upon every principle of justice ought to make it good." 7 Watts & S. 38.

In *Adams* v. *Adams* the court said: "The sheriff in making the contract of sale with James Adams was not acting as the agent of the plaintiff, nor yet of any one else. He is considered the principal himself in such case, and the legal, as well as the real, party making the contract of sale. Although it be true that he acts in the character of trustee, yet it must be born in mind that it is as an officer of the law that he does so, and that it is from the law he derives all his power and authority." To the same effect are the following cases: *Burbank* v. *Dodd*, 4 Pac. Rep., 303; *Griffin* v. *Thompson*, 2 How., 244.

It follows that the Kellys were not bound by the actions or the omissions, of the marshal further than he conformed to the law. The decree and order of sale made it the duty of the marshal to make the money due as shown by them. He had no authority to receive anything but lawful money in satisfaction of the decree. He had no right to take Peery's promise and execute to the Kershaws a receipt in full for the sum due on the decree. He could not acknowledge satisfaction of the decree that would be binding on the plaintiff without first receiving payment in full in lawful money. And having done so the Kellys had a right to insist that the court set aside the sale, and order a resale of so much of the property described in the decree as would be necessary to satisfy it; or they might have elected to ask the court to accept Peery's bid. But this they did not do. They claimed as they had a right to, the payment of the decree in money. The marshal, as we have said, was

required to convert into money so much of the land described in the decree as would pay the debt, and to pay it to the plaintiffs. He had no authority to turn over, in satisfaction of it, a promise of a bidder to pay—a lawsuit. If the defendants in the case did not want their property sold, they should have paid the decree, as it was their duty to do. They having failed, it became the officer's duty to convert their property into money, and make the payment for them. *Colton* v. *Camp*, 1 Wend., 365; *Griffin* v. *Thompson*, 2 How., 244; 2 Freem. Ex'ns, §§ 443, 444; *Bank* v. *Wakeman*, 1 Cow., 46, and note *a*; *Mumford* v. *Armstrong*, 4 Cow., 553.

In *Griffin* v. *Thompson* the marshal had returned on an execution that he had received in satisfaction thereof bank notes. And upon motion of the judgment creditors, the lower court quashed the return, and ordered and issued an *alias* execution, which the judgment debtor moved to quash. Upon a division of opinion the case came before the supreme court of the United States, and in deciding it that court said : "It cannot be questioned that the defendant in that motion was entitled to the full benefit and operation of his execution, and these were to cause to be made for him of the goods and chattels, lands and tenements, of his debtor the sum of $1,740.02 of lawful money of the United States. With his claim thus solemnly ascertained of record, we are aware of no authority from any source which can compel him to commute it, or to receive in satisfaction thereof any other thing which he shall not voluntarily elect." Referring to argument to the contrary the court further said: "But the fallacy of the argument here consists in totally misconceiving the situation and functions of the marshal. He is properly the officer of the law rather than the agent of the parties, and is bound to fulfill the behests of the law, and this, too, without special instruction or admonition from any person." The court held that return on the first execution was properly quashed, and that the *alias* execution should not be. Freeman in his work on Executions says: "If a sheriff returns a writ satisfied when he has not received payment thereof in money, the plaintiff is not bound thereby. He

may have the return vacated and procure an *alias* writ, or he may treat the return as true, and compel the sheriff to account to him for the amount of the writ in the kind of money which the officer was by law to collect." In the case of *Colton* v. *Camp*, the deputy sheriff misconstrued the written instructions given him by the plaintiff in the execution, and took the note of the defendants for his fees, and the latter executed a bill of sale, of the property that had been levied on, to third persons, the officer informing the parties to whom the bill of sale was executed that he had no lien on it. But afterwards, upon discovering his mistake, he again took possession of the property, and removed it from the house of the defendant in the execution, and the parties to whom the bill of sale had been executed instituted an action of trover against him. The court in its opinion said : "The material question then appears to me to be whether the deputy sheriff was authorized to relinquish the lien acquired by his levy. For if he was not I should be very clearly of the opinion that the act was entirely nugatory, and could not in any manner affect or prejudice the rights of the plaintiffs in the execution, or of their assignee; that the lien still remained, notwithstanding the declaration of the deputy sheriff that he relinquished it; and that the sheriff or the deputy would be justified in subsequently enforcing the execution against the same property. A sheriff cannot discharge an execution without payment. If he returns the execution satisfied upon receiving the defendant's note instead of money, it is no satisfaction of the judgment or execution." The marshal in this case was not authorized to acknowledge, by receipt or otherwise, satisfaction of the decree, and thereby release its lien on the property or any portion of it, without receiving the money due upon it, and Hartog & Huss relied upon the receipt at their peril. They should have seen that the decree was satisfied. They should have ascertained that Peery had paid his bid upon one piece of the land before advancing money on the other piece.

A further point in this case is that the injunction in question was issued to restrain the marshal from executing an order of sale made in an equitable case. The court

had jurisdiction of the subject matter of the order, and of the parties. And it follows from that, that the order cannot be treated as a nullity. It was such an order as could have been appealed from. In order to sustain the injunction in question it would be necessary to treat the order as absolutely void. The trial court did not confirm the sale to Peery, and accept the offer in that way; nor did it make any order, or take any action, to hold him to his bid, and order a resale in the mean time at his risk, according to chancery practice in such cases.

The case of *Camden* v. *Mayhew*, relied on by appellants, was an appeal from a final order requiring Camden to pay the difference between the amount bid for real estate offered for sale under the decree in that case and the amount the property brought on a resale. The Court said: "It is undoubtedly true that Camden's bid    *    *    *    *    was in legal effect only an offer to take property at that price; and that the acceptance or rejection of the offer was within the sound equitable discretion of the Court, to be exercised with due regard to the special circumstances of the case, and to the stability of judicial sales." And the Court, after stating, in substance, that it was further contended that an acceptance of that offer could only have been manifested by an order confirming the sale, and admitting that a formal order of confirmation, and the tender of a deed followed by an order compelling him to pay the whole amount, would have been necessary to the completion of the contract, used this language: "But it was not restricted to that particular mode,    *    *    *    for upon appellant refusing to pay the amount bid, the Court without confirming the sale by a formal order could have held him to his offer, and ordered a resale in the meantime at his risk, both in respect to the expense of the resale, and any deficiency resulting therefrom." 129 U. S., 73, 9 Sup. Ct. Rep., 246.

In its opinion the Court stated, in substance, three propositions: (1) That acceptance or rejection of the bid was within the sound equitable discretion of the Court. (2) That a formal confirmation of the sale, and a tender of a deed, followed by an order compelling the

whole amount to be paid, is necessary to hold the bidder to the payment of the full amount of his offer. (3) If the bidder refuses to pay, the Court without a formal order of confirmation can hold him to his offer, and order a resale in the meantime, at his risk, as to the deficiency and expenses. In the second proposition the requisite steps to enforce a specific performance of the contract of the payment of the full amount of the bid are enumerated. In the third proposition the prerequisites to a decree for the loss from a failure to pay the bid are mentioned. The court below did not confirm the sale to Peery, nor did it order a resale at his risk. From the order made, we must assume that it decided not to do either. It follows that the order of sale complained of was not a nullity, and that the Court committed no error in so deciding in dissolving the injunction that so treated it. If the appellants were not satisfied with the order of sale complained of, they should have appealed from it. Upon further consideration and more mature reflection, we are disposed to hold that this court at a former hearing of this case reached a wrong conclusion. The order of the court below is affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.