[CHAMBERSBURG, NOVEMBER 1, 1828.]

## M'COY *against* SCOTT.

### IN ERROR.

An administrator who collects the rents and profits of the real estate of the intestate, holds them as trustee for the heirs, and not for the creditors. Until the right of the heirs is divested by a sale by the administrator under an order of the Orphans' Court, or by execution, the right of the heirs to the land is as absolute as that of their ancestor.

ERROR to the Court of Common Pleas of *Franklin* county.

The opinion of the court (HUSTON, J., dissenting,) was delivered by

ROGERS, J.—Although lands in *Pennsylvania* are considered as chattels for the payment of debts, yet, in the case of an intestacy, the real estate goes to the heirs, and the personal estate to the legal representatives. The security exacted from the administrator has reference to the value of the personalty, as was decided at *Sunbury*, when we held, that the surety in an administration bond was not liable for the real estate. When lands are wanted for the payment of debts, there is a mode pointed out by the act of assembly, which the administrator is bound to pursue, for the real fund is not absolutely, but *sub modo*, assets in his hands. Until this proceeding takes place, the administrator has nothing to do with the real estate; and this I believe to be the universal understanding of the profession, and has, on several occasions, received the sanction of this court. The administrator, *M'Coy*, collected the rents and profits of property which had been leased by the intestate in his life time; and the question is, whether the administrator be a trustee for the creditors or heirs. We are of the opinion, the money was received for the benefit of the heirs. It is objected that this impairs the rights of the creditors, but this will depend upon the question, to whom does the law adjudge the right to the money arising from the rents and profits? for as it will be observed that this money was received by the administrator, without any authority from the Orphans' Court, it will be considered to have been received for the benefit of those to whom of right it belongs. The creditors have two remedies: they may either proceed to sell the estate themselves, by judgment and execution, or they may await a sale to be made by the administrator, under an order of the Orphans' Court. It is a benevolent principle of law, that, until this be done, the widow and children shall not be altogether destitute of support. The law does not place them absolutely at the mercy of the administrator. If the administrator can interfere with the rents and profits, for the use of the creditors, it would be his duty to do so; and it

(M'Coy *v.* Scott.)

would be at the peril of the administrator if the widow and children were suffered to remain on the premises; for in case of an eventual deficiency of assets, he would be guilty of a *devastavit.* Justice, then, to himself, would make it necessary, in all cases, where there was a chance of insolvency, to exact security from the widow and children; which has not yet been done, and, indeed, in many cases produces misery and distress.   Until the administrator has settled his administration account, it cannot be known what debts against the intestate will remain unpaid.   Nor until the administrator has thought proper to pursue the mode pointed out by the act, to possess himself of the real fund, or the creditors to proceed for recovery of their debts, can it certainly be known whether the real estate be wanted for the payment of the debts, or whether the personal estate will not be sufficiently abundant for that purpose. Hence it is, that when the heirs receive the rents and profits, or live on the land, and cultivate the soil, and expend the proceeds in the maintenance of the family, under an idea which proves unfounded, that the property is their own, to compel them to refund, would sometimes be attended with utter ruin, and almost always with great inconvenience.   It is a strong argument with me, that in cases of such common occurrence, not one has been produced where the heir has been charged with the rents and profits received, or money made by the cultivation of the real estate.   The heir takes the place of his ancestor, in regard to the land, subject to the liens which bind the fund, but not its profits.   If the creditors wish to receive the proceeds of the real estate, they must proceed themselves, or get the administrators to do so.   And there is no hardship on the creditors to compel them to use legal diligence in resorting to a fund which is only pledged *sub modo* in payment of the debts of the deceased.   If by their neglect they have betrayed the family into a false confidence, on them be the loss.   They have no right to complain when they have a remedy in their own hands.   As the land goes into the possession of the heir, he has a right to take the necessary estovers.   If a trespass be committed, he must commence suit; the damages would be his absolutely, which seems to show that he is the owner of the fee simple, as were his ancestors, subject to be defeated by an enforcement of the claims of the creditors, or a demand made in due form by the administrator of the real fund for payment of debts.   In *England,* when suit is brought against the heir, on the obligation of his ancestor, execution goes against the lands which are sold, the proceeds of which belong to the creditors; the intermediate profits remain with the heir, who is not bound to account for them, and in conformity with this has been the practice in *Pennsylvania.*   The heir is considered the owner of the land, subject to the liens which are ascertained as attaching on the land, either by the administrator, or by suit brought by the creditors.   Until these proceedings are resorted to, the right of the heir is as absolute as the right of his ancestor.

Judgment affirmed.