## Adams *against* Adams.

For a breach of contract between a sheriff, and his vendee of land, no action will lie in the name of any one but the sheriff.

The heir is not accountable either to the administrator or the creditors of an intestate for the rents and profits of the real estate which accrue after the death of the ancestor.

ERROR to the common pleas of *Huntingdon* county.

The facts of this case are fully stated in the opinion of the Court, which was delivered by

KENNEDY, J.—Each party sued out a writ of error in this case. It appears to be an action of *assumpsit*, brought in that court by Thomas Wilson, surviving administrator of John Adams deceased, against Thomas Adams and John Douglass, administrators of James Adams deceased, to recover two several sums of money. The one mentioned in the first count of the declaration is 455 dollars; which the plaintiff claims of the defendants on the following ground. James Adams, the intestate of the defendants, in his lifetime became the highest bidder at a sale then making of the real estate of John Adams, the intestate of the plaintiff, by the sheriff, under an execution upon a judgment obtained against the plaintiff as administrator for a debt of his intestate. The property was struck down to James Adams; he, however, failed to pay the sum bidden by him, which was 1800 dollars; and the estate was sold afterwards by the sheriff under an *alias venditioni exponas* to another person for 1345 dollars. All the personal assets had been exhausted by the plaintiff in paying the debts of his intestate. And by reason of his having misapplied some portion of them in paying simple contract debts, instead of specialty debts which remained unpaid, amounting to some 400 or 500 dollars, he had to pay these specialty debts out of his own funds, and by this means became, as he alleged, a creditor of the estate. The 1800 dollars bidden by James Adams for the real estate, had he paid the amount, would have been about sufficient, as is said, after paying all the debts of John Adams that remained unpaid, to have reimbursed the plaintiff the amount paid out by him. The plaintiff being administrator of John Adams, and conceiving himself individually injured by the delinquency of the defendant's intestate in not paying the 1800 dollars to the sheriff, seemed to think that he had a sort of double right to maintain this action to recover 455 dollars, the difference between the sum bidden by James Adams and that for which the real estate of John Adams was afterwards sold; and that the law, under the circumstances of the case, implied a

promise on the part of James Adams to pay it to him. The court below, however, instructed the jury that the plaintiff was not entitled to recover this sum of money from the defendant; and in this it is alleged that the court erred. It is not pretended that the plaintiff or his intestate was a party to any express agreement made with the defendant's intestate, for a breach of which he can sustain his claim. Unless then the law, from the special circumstances of the case itself, raised a promise on the part of James Adams to pay the 455 dollars to the plaintiff, it is manifest that he cannot recover.

The only contract or provision made by the intestate of the defendants for the payment of the 1800 dollars, or any portion of it, was made with, or to the sheriff who was authorized by law to sell the estate. The sheriff, in making the contract of sale with James Adams, was not acting as the agent of the plaintiff; nor yet of any one else. He is considered the principal himself in such cases, and the legal as well as real party making the contract of sale. Although it be true that he acts in the character of a trustee, yet it must be borne in mind that it is as an officer of the law that he does so; and that it is from the law he derives all his power and authority: and in sales of property made by him as sheriff under this authority, he alone has the right to receive the money arising therefrom, and is responsible for the legal appropriation of it, unless it is brought by him into court for that purpose. It would inevitably produce great confusion and clashing of suits to permit other persons, beside the sheriff, in their own names to maintain suits against the sheriff's vendees for breaches of their contracts made with him. It would also be inconsistent with every principle of analogy in the law. The court were right, then, in directing the jury that the plaintiff was not entitled to recover the money in question, because there was no privity of contract between him and the intestate of the defendants. There was none, most certainly, either in fact or in law. The judgment of the court below, on this part of the plaintiff's claim, is therefore affirmed.

I come now to consider the case under the writ of error sued out by the defendant below, who alleges that the court below erred in their charge to the jury in directing them that the plaintiff was entitled to recover from the defendant as the administrator of James Adams, the other sum of money mentioned in the second count of the declaration. The grounds upon which this last sum, amounting to 100 dollars 66 cents, beside interest, was claimed to be recovered, were these: James Adams, the intestate of the defendant, was one of the children and heirs of John Adams, the intestate of the plaintiff, and, as such, took possession of his father's real estate on his death, and occupied it from 1824 to 1827, a space of three years, without having any agreement whatever with any one respecting the use of it. He was a creditor of his father's estate; and the plaintiff below having failed to perform the condition of his administration bond, a suit was brought on it against him and his sureties, in which a cau-

IV.—V

tionary judgment was obtained against them.   The defendant sued out a writ of *scire facias* upon this judgment in order to have execution for the debt coming to him from his father's estate.   Several other creditors in like manner severally sued out writs of *scire facias*. By agreement of all the parties in these writs of *scire facias*, a rule of court was entered in each case referring it to an auditor to determine and ascertain the amount due therein, if any thing, to the respective plaintiffs.   The auditor, after hearing the proofs and allegations of the parties, made out and stated an administration account of the estate of John Adams for the plaintiff below in this case, charging him with the amount of the personal estate of his intestate, which had come to his hands ; and likewise with 210 dollars, and 61 dollars 29 cents as interest thereon, under the name of rent for the real estate during the three years that James Adams occupied it after his father's death.   The auditor did this either at the solicitation of the plaintiff below in this case, or because he conceived that the profits of the real estate of the intestate, accruing after his death, were assets for the payment of his debts, and that as such the administrator, who is the plaintiff here, ought to have collected them from James Adams.   James Adams protested against his being liable to account for, or to pay the profits to any one, because he had made no agreement for such purpose; and again, because he had made permanent improvements on the estate, equal in value to the amount of all the profits received by him.   The auditor, however, not only charged the plaintiff in this case with the 210 dollars and the interest thereon, amounting to the sum of 271 dollars 29 cents, but having found and ascertained the amount of James Adams's claim, in his writ of *scire facias* against the estate of his father as a creditor, to be 170 dollars 63 cents, he deducted this debt coming to James Adams from the 271 dollars 29 cents ; and accordingly reported to the court that there was not any thing due or coming to James Adams in the writ of *scire facias*, but that he was indebted to the plaintiff in this case, who was the defendant in the *scire facias*, 100 dollars 66 cents, with interest thereon from the 26th of September 1831.   This sum thus reported to be due, is the same for which the plaintiff below obtained a judgment against the defendant in this action.   James Adams, upon the report of the auditor being made to the court against him, moved to have it set aside *in toto*.   The court refused to do this, and rendered a judgment on the report, so far only as it found that there was nothing due to James Adams the plaintiff in the *scire facias;* declaring at the same time that they could render no judgment against him for the 100 dollars 66 cents, with interest thereon according to the report of the auditor.   James Adams, still dissatisfied, brought the case afterwards by writ of error into this court, where the judgment of the court below was affirmed.

The court, upon these circumstances being given in evidence, and there being no attempt to controvert the truth of them, instructed the jury that the plaintiff could recover the 100 dollars and 66 cents

[Adams v. Adams.]

with interest thereon, in this action, if there was no evidence that it had been paid. In this direction, the defendant below, who is the plaintiff in the second writ of error between these parties, alleges that the court erred. The court below seem to have thought that the plaintiff below was entitled to recover these 100 dollars and 66 cents, with interest thereon, from the estate of James Adams : first, because the auditor had charged him with the same, as administrator of John Adams, and that James Adams was bound to pay it, because he was a party to the reference of the suit of *scire facias,* in which the auditor had so charged it. And, second, because, as the court say, "judgment was given thereon by the orphan's court, and affirmed by the supreme court." In the hurry of the trial and probably the press of business at the time, the court, in their second reason for instructing the jury as they did, seem to have apprehended that the proceeding in which the report of the auditor was made was had in the orphan's court, where all who were interested in the estate might be considered parties to it, and, therefore, bound by the judgment finally rendered. In this, however, the court were clearly mistaken as to the fact; for the only proceeding in which an auditor ever was appointed, who made a report embracing the subject of the present controversy, was that already mentioned in the common pleas, in the writ of *scire facias.* And indeed I may venture to affirm, that if such a proceeding had happened to have taken place in the orphan's court, and it had afterwards been brought into the supreme court by appeal, it would have been reversed: because, to attempt to charge the administrator with the profits of the real estate of his intestate, as being assets, where it has been enjoyed and occupied by the heirs or any of them after the death of the intestate, or to make the heirs liable to the administrator for such profits, would not only be contrary to what I have ever considered the universal practice throughout the state in this respect, but putting into his hands what he never gave any security to administer faithfully as part of the goods and chattels of his intestate ; and would likewise be directly in the face of what was decided by this court, in the case of M'Coy *v.* Scott, 2 *Rawle* 222, where it was held that the heirs, so far from being liable to account for and to pay the profits of the real estate received by them to the administrator, had a right to recover them from him, where he had received them, notwithstanding the personal estate was insufficient to meet the payment of the debts. Neither am I inclined to believe that a decree of the orphan's court, to the effect stated by the court below in their charge to the jury, though unreversed, would be binding on the heirs: because I do not consider that the orphan's court have any authority whatever to enforce, by their judgment, the recovery by the administrator of that which may even properly belong to him as assets, against the heirs or any body else ; unless it be in a few excepted cases, when the authority is given by acts of assembly—as for instance, in the case of an executor or administrator dismissed

from office by the order of that court, on account of his wasting the estate. It may pass a decree that such executor or administrator shall deliver and pay over the assets remaining in his hands, unadministered, to the person appointed to succeed him in office.

It has, however, been said in the argument of this case, that the administrator of John Adams, the plaintiff below, was charged with the profits of the real estate at the instance of James Adams, in the writ of *scire facias*, where the proceeding took place in which it was done. This is certainly not supported by the record, or any thing that appears on the face of the proceedings: on the contrary, it is apparent that the profits of the real estate were charged against James Adams, in favour of the administrator, for the purpose of defeating his claim against the estate ; and as James Adams could not well be thus charged, without a corresponding charge being made against the administrator, it is much more likely that the plaintiff sought to have himself charged with them, in hopes too that he would not only thereby extinguish the claim of James Adams against the estate of his father, but that he would also get something by it from James to reimburse himself some portion of the money which he says he is out of pocket by paying debts against the estate. This conclusion is fortified by the circumstance of the plaintiff below not only acquiescing in the report of the auditor, but from his having opposed its being set aside, when James Adams applied to, and moved the court for that purpose. This part of the case, brought to our view under the writ of error sued out by the defendant below, then presents the bare naked question, whether the administrator has a right to demand and to recover from the heirs of the intestate, the rents, issues and profits of the real estate, descending to them from their ancestor, which have accrued and been received by them since his death, for the purpose of paying the debts of the deceased, or reimbursing himself moneys which he may have paid out of his own funds, in discharge of the same. The case of M'Coy *v.* Scott, already cited, is a decisive answer, that he has no such right.

The judgment of the court against the defendant below, is therefore reversed.

*Potter,* for plaintiff below, cited, Doran *v.* Holdship, 1 *Penns. Rep.* 1.

*Bell,* contra, cited, M'Coy *v.* Scott, 2 *Rawle* 222.