## Gaskell *against* Morris.

In a suit by the sheriff against a purchaser at sheriff's sale to recover damages for breach of the contract of sale, the writs of *alias* and *pluries venditioni exponas* are not evidence without the record of the judgment.

But if they are admitted, the error is cured by afterwards reading the record in evidence.

Parol evidence may be given of a written notice delivered to a party to pay money, and the contents thereof, without showing notice to produce the notice on the trial.

Written conditions of sheriff's sale *held* evidence where they were read aloud by the sheriff's agent at the opening of the sale, and some evidence was given that the defendant was present before and during the sale, and there was proof that he signed a written acknowledgment that he had become the purchaser.

On a resale, the sheriff is not bound to give the first purchaser notice of the time and place of the second sale; it is sufficient to notify him that unless he pays his money, the property will be resold.

And *quære*, whether even this is requisite.

The sheriff ought to resell the property where the first purchaser fails in his contract; and the sheriff is the proper person to sue for the diminution of price that may happen by the resale.

The damages in such case given by the jury cannot be complained of, if they do not exceed the difference between the first and second sale.

ERROR to the District Court for the city and county of *Philadelphia*.

This was an action of *assumpsit* brought by Henry Morris, sheriff of the county of Philadelphia, against Thomas Penn-Gaskell, in which a verdict and judgment were rendered for the plaintiff. The plaintiff died pending the suit, and his administrators were substituted.

The declaration alleged an *alias venditioni exponas* to the plaintiff for the sale of a house and two lots of ground in Sixth near Chesnut street; that in pursuance thereof the premises were exposed to public sale on the 7th February 1842, and were sold to the defendant for $7050; and though the plaintiff was ready and willing to convey, the defendant would not pay the purchase money or any part thereof, but neglected and refused so to do, and refused to comply with his contract, so that the writ was returned unsold for want of buyers, and a *pluries venditioni exponas* was issued, whereupon the plaintiff, on the 18th April 1842, after advertising, exposed the premises to public sale, and they brought only $4500, leaving a deficiency of $2550 and the charges; with other common money counts. The plea was *non assumpsit*.

The defendant's signature to the following, which was pasted in the sheriff's sale-book, was admitted by the defendant on the trial:

[Gaskell v. Morris.]

### Printed Conditions of Sale.

Sheriff's Sale.—By virtue of a writ of *alias venditioni exponas*, to me directed, will be exposed to public sale or vendue, on Monday evening, February 7, 1842, at 7 o'clock, at the Philadelphia Exchange, a certain messuage or tenement, and two lots or pieces of ground, situate on the west side of Delaware Sixth street, at the distance of 80 feet southward from Chesnut street, in the city of Philadelphia, described together as followeth, to wit: containing in breadth north and south 19 feet, in depth 55 feet, bounded northward by ground late of William Poyntell, westward by ground late of Noble C. Nelson, southward by ground late of Nicholas Jones, and eastward by Sixth street aforesaid, (being the same premises which Henry Huber, by indenture bearing date the 1st of February 1837, recorded in the office for recording deeds, &c., for the county of Philadelphia, in D. B. G. S. No. 4, p. 85, &c., for the consideration mentioned therein, granted and conveyed unto the said William H. Elsegood, in fee, subject to the payment of a yearly rent-charge of $45.60, being the proportionate part of a large yearly rent-charge, as therein mentioned; for part of which said consideration money a mortgage was given to secure the payment of the obligation, under a judgment upon which the present execution is issued).

Seized and taken in execution as the property of William H. Elsegood, and to be sold by

                        Henry Morris, Sheriff.

Sheriff's Office, Philadelphia, January 5, 1842.

N. B. The sheriff has made the following one of the conditions of his sales of real estate, and it will be enforced on the sale of the above premises: Fifty dollars of the price or sum at which the property shall be struck off shall be paid to the sheriff at the time of sale (unless the purchase money be less than that sum, in which case only the purchase money shall be paid); otherwise the property will again be immediately put up and sold.

The residue was in writing on the margin of the sales-book:

" Henry Huber for use of Robert Potter *v.* William H. Elsegood. Als. vend. exp. D. 41, D. C. 767. Cadwalader. Debt, $7000.

Seven thousand and fifty dollars.
                  $7050.

$50 paid.                    Thos. Penn-Gaskell.
Terms of sale not complied with."

In the beginning of this book, the following was written:

### Written Conditions of Sale.

Fifty dollars of the price or sum at which the property shall be struck off shall be paid to the sheriff at the time of sale (unless the purchase money be less than that sum, in which case only the

    vii. — 5

[Gaskell v. Morris.]

purchase money shall be paid); otherwise the property will again be immediately put up and sold. The balance of the purchase money must be paid to the sheriff, at his office, within ten days from this date, without any demand being made by the sheriff for the same; otherwise the property may be sold again at the risk and expense of the person to whom it is now struck off, who, in case of any deficiency at such resale, shall make good the same. Arrears of ground-rent and taxes, if any, will be paid out of the purchase money, if the bills are presented to the sheriff before he parts with the money; otherwise they will be paid by the purchaser.

The defendant paid $50 down, but nothing more; and the sheriff returned a sale to him for $7050, and property unsold for want of buyers. He afterwards sold it again to another person, Mr Potter, for $4500.

The plaintiff examined the sheriff's agent to prove the sale to the defendant. He stated that the written conditions of sale were always read at the beginning of the sale, not before each property is put up. Another witness stated he took a written notice to the defendant to come forward and comply. Witness read it, but kept no copy. The plaintiff asked its contents; the defendant objected, but the court admitted the evidence and sealed an exception. The witness said it was a notice to come forward and comply with the terms of the purchase, or the property would be resold at his risk. This was before the second sale. Another witness, Mr Cadwalader, said he was counsel for Mr Potter and others, and was at the first sale, and the defendant was there some time before the bidding for this property began. He thought he saw him there quite early in the evening, as he was then in conversation with him.

The plaintiff then offered in evidence the written conditions of sale, which the defendant objected to, but the court admitted and sealed an exception.

The plaintiff then read in evidence the judgment on which the *venditioni* issued.

The court charged the jury as follows:

" It is not disputed that at the sale of the 7th February 1842, the defendant bid for the property $7050, and had it struck down to him at that price; that he omitted to pay the money, and that on a second sale, under the circumstances in evidence, the property was sold to Mr Potter for $4500. The defendant has suggested several legal objections to the plaintiff's recovery.

1. That the sheriff is not the proper party to bring the suit.

The answer is, that the sheriff, if alive, and his proper representative, if dead, is the proper party.

2. That no sufficient proof has been given of proper advertisement of the sale of 7th February 1842.

The answer is, that any irregularity on that subject could

[Gaskell v. Morris.]

have been shown on an application to the court to set aside the sale. It is too late now to make the objection.

3. That there was no tender of a sheriff's deed before this action was brought, and that there is no evidence of a waiver by defendant of the tender.

The answer is, that the sheriff is not bound to tender a deed in such a case; as a public officer, he acknowledges the deed in open court after receiving the money."

The Judge further remarked, that whether the condition as to ten days was brought home to the defendant or not, was for the jury to decide; and that if this condition could not be relied on, then the defendant was entitled to a reasonable time; and that the plaintiff alleged that full time was allowed and notice given to him, as to which the Judge said the jury would determine.

Errors assigned:

1. The *alias venditioni exponas* from D. C., of December term 1841, 767, and return thereon, together with the *pluries venditioni exponas* and its return, were admitted as evidence.

2. Oral evidence of the contents of a written notice not shown to be lost or destroyed, the full contents of which were not recollected by the witness, was received.

3. The written conditions of sale were admitted in evidence.

4. The defendant received no notice that a second sale of the property was to take place, nor of the time and place thereof.

5. The Judge charged that the suit was properly brought by the sheriff.

6. The Judge left the fact of notice to the jury when none was in proof.

7. The sum found by the jury was excessive, and not justified by the requisitions of the conditions of sale signed by the defendant.

*Tyson* and *G. M. Wharton*, for the plaintiff in error.

1. The writ returned is part of the record, and cannot be proved by a mere exhibition of it without the rest. 1 *Stark. Ev.* 281, 330 (*Gerhard's ed.*)

2. The notice was not sufficiently proved. The witness knew little about it. Besides, it was oral as to the contents of a paper, and no notice was given to the defendant to produce it. 1 *Yeates* 371; 1 *Dall.* 424; 2 *Serg. & Rawle* 31.

3. The conditions of sale, called the written conditions, were not the real conditions of sale; these were the printed ones only; and it was not shown that the defendant was conusant of the former. Where there are written particulars of a sale, parol evidence to show other conditions is not admissible. 1 *H. Black.* 289; 12 *East* 6; 15 *Vez.* 515; 11 *East* 142; 2 *Esp.* 271; *Ross on Vend.* 208. According to the conditions we bought under, we were discharged on paying $50 forfeit. We are not bound for the

[Gaskell v. Morris.]

difference on a resale, unless the conditions of sale particularly stipulate for it.   7 *Cr.* 399 ; 2 *P. R.* 320, *per* HUSTON, J.

4 and 6.  There was no notice of the time and place of resale, and therefore the charge was erroneous in leaving to the jury to say whether there was notice.

5.  The sheriff cannot sue; he has no interest in the contract, but is a mere agent for the plaintiff.   His poundage and costs are paid out of the $50.   An auctioneer may sue, 2 *Esp.* 445 ; 1 *W. Black.* 81 ; or a sheriff on a sale of personal property, but not on a sale of real estate, where, after his writ has been returned and the costs paid, he has no longer any interest.   An agent or attorney cannot maintain an action.  10 *Johns.* 387 ; *Sug. Vend.* 236.  Here the suit could only be brought by the plaintiff in the execution.

*H. M. Phillips* and *Meredith*, contra.          ·

1.  To charge the sheriff's vendée, it is only necessary to prove the sale and produce the writ.   But, however that may be, the record was afterwards read, and therefore the objection became immaterial.

2.  Oral evidence was sufficient.   The defendant was. bound to produce the notice proved to be in his possession.   No notice is necessary.   The party was bound to come forward and pay his money; the sheriff is not obliged to tender a deed and demand it, but may resell.  10 *Serg. & Rawle* 207.   Moreover, it is a rule that notice to produce a notice is not necessary.

3.  Cadwalader proved the defendant was there before the sale, and the court then admitted the written conditions.   The signature of the defendant was in effect to the whole of the book, and the presumption of law is, he was acquainted with the whole of its contents.

4.  The defendant is not entitled to notice of the time and place of the second sale; that is a public matter which he is bound to inquire into, especially if he has notice it is intended.

5.  The suit could only be by the sheriff as trustee for the party interested.   *Davis* v. *Baxter*, (5 *Watts* 515).

6.  This is not one of the points excepted to below.

The opinion of the Court was delivered by

KENNEDY, J.—The first error is an exception to the opinion of the court below, admitting the *alias* and *pluries* writs of *venditioni exponas* therein mentioned, with the returns thereon respectively made by the sheriff, to be read in evidence, without producing the record of the judgment and previous process, which was requisite in order to show that the same were legally issued.   Though it was wrong to admit the writs in evidence here excepted to, without first showing by the record called for that they were regularly issued, yet the error was cured afterwards in the course of the

trial by the production and reading of the record in evidence to the court and jury.

The second error assigned is also an exception to the opinion of the court, admitting verbal evidence to be given of the contents of a written notice, alleged to have been given to the defendant below, that the property sold to him by the sheriff would be resold unless he paid the purchase money.  No duplicate of this notice had been made, but the person who was employed by the sheriff to deliver it to the defendant was produced to prove the service and the contents of it.  The proof thus offered as to the contents was objected to because it was secondary only, and therefore not admissible without showing first that a notice had been given to the defendant below, or his attorney, tò produce, on the trial of the cause, the notice itself, which was the best evidence of its contents.  No doubt every written instrument furnishes, when produced, the best evidence of its contents; and hence the general rule on this subject requires that the party who wishes to prove its contents must either produce it, or show that it is not in his power to do so; and if he cannot ·produce it, because it is in the possession of the adverse party, he must show that he has given his adversary reasonable notice beforehand to produce it on the trial, otherwise he will not be permitted to give secondary evidence of its contents.  But if the instrument, the contents of which are offered to be proven, be itself a mere notice, it forms an exception to the rule; for it is very evident that the application of the rule to such a case would put it out of the power of the party wishing to prove the contents of the notice to do so, as long as his adversary declined producing it on the trial; as the rule, if applied, would require the contents of a second notice given to produce the first, to be, proven by the production of the second in the same manner as the first, and so as to the contents of every subsequent notice, thus rendering the thing interminable.  See *Greenleaf's Evidence* 597 ; 1 *Archb. Pract.* 168 ; 2 *Camp. N. P. Rep.* 599 ; 3 *B. & B.* 288.

The third error is also an exception to the opinion of the court admitting the written conditions of the sale made by the sheriff, the plaintiff below, at which the defendant became the purchaser, to be read in evidence to the jury.  The objection to their being read was, as alleged, that it did not appear that they were made known to the defendant, or that he had a knowledge of them in any way, either previously to. or at the time of the sale.  This objection, however, does not seem to be well founded in point of fact; for evidence was given showing, first, that the conditions were read aloud by the agent of the sheriff at the opening of the sale ; secondly, evidence tending to show, though not very strongly, that the defendant was present before and during the time of the sale ; and, thirdly, direct evidence that he signed a written acknowledgment that he had become the purchaser of the pro-

perty at it for the sum of $7050. This was certainly proof suffi-
cient to warrant the reading of the written as well as the printed
conditions of sale in evidence. But it being distinctly proved
that the conditions offered in evidence were the same that were
read and promulgated as such at the time of the sale, it is fair to
presume, without more, that the defendant thereupon acquired a
knowledge of them; and positive proof, therefore, of the fact of
his having obtained such knowledge, was not necessary to be
made, in order to enable the plaintiff below to read them in
evidence.

The fourth error is, that the defendant below received no notice
that a second sale of the property was to take place, nor of the
time and place thereof. But the record shows that evidence was
given to the court and jury, showing that he was required and
notified by the sheriff, the plaintiff below, to pay the purchase
money according to the terms of the sale, or otherwise the pro-
perty would be resold at his risk. This notice, if any of the sort
was requisite, was sufficient to put him on the look-out, so as to
guard against the consequences of a resale, which could only be
done by his paying the purchase money without delay. It was
certainly not the duty of the sheriff to notify the defendant below
of the time and place at which the resale would be made; it was
sufficient, if not more than he was bound to do, to let the defend-
ant know that unless he paid the purchase money after it became
payable according to his undertaking, a resale would be made at
his risk; and this, as appears by the evidence, was done.

The fifth error is an exception to the instruction given by the
court to the jury, that a suit brought for the purpose of the
present might be maintained by the sheriff in his own name. We
are decidedly of opinion that the court was right on this point.
It is in accordance with the opinion of this court as expressed in
*Adams* v. *Adams*, (4 *Watts* 160), where it was not only held that
such action might be maintained by the sheriff who made the
sale, but that it could not be maintained by any other person. It
is very important that sales made by sheriffs of property taken in
execution by them, should be regulated by such principles as will
tend to obtain prices therefor equal, if possible, to its full value,
and at the same time to avoid all unnecessary delay in satisfying
the executions. Every day's experience, however, shows that the
price obtained for property by a sheriff on a resale made by him,
because the first or any prior purchaser has failed to pay the
amount or price bidden by him for it, falls, not unfrequently,
greatly short of the price bidden at the first or prior sale. But
if the difference of price cannot be recovered by the sheriff from
the first or prior purchaser, resales ought never to take place where
the first sale has been fairly made for something like or near a
fair price, and the purchaser is able to pay; because it is not pro-
bable that the resale can be effected without occasioning a loss, at

[Gaskell v. Morris.]

least to the defendant in the execution, and perhaps to his creditors also. But if a resale is never to be made, when the sale is fair and the purchaser is able to pay, great and unreasonable delay may and indeed will frequently attend the recovery of the price bidden by the purchaser, which can only be obtained from him, when he refuses to pay, by means of an action commenced and prosecuted according to the ordinary forms of law. Besides, as resales seldom fail to depreciate the property, if it were to be held that the first or prior purchaser could not be made liable to pay the difference between the price bidden by him and that obtained on the second or subsequent sale, it might and probably would tempt some one of the persons wishing to become owners of the property, to become the highest bidder at the first sale, with the intention of declining to pay the price so bidden, unless compelled by suit to do so, hoping thereby to force a resale, at which he would have the probable chance of getting the property at a reduced price; or, if bidden up on the purchaser at the first sale to the same or a higher price at the second sale, at which he again becomes the highest bidder, he may still refuse to pay, in hopes of forcing the property to a third sale, with a view of getting it ultimately for a much less price. No one can doubt that such conduct would be very unfair and highly reprehensible, and ought, therefore, not to be countenanced or sanctioned; neither ought any principle to be sanctioned that would, in practice, have a natural tendency to induce any, under an insatiable thirst for gain, though it produced the ruin of others, to pursue such a course at sheriffs' sales, where the delay in obtaining the money directed to be levied by the execution might induce the plaintiffs therein to have a second, third, or more sales to be made, if necessary, until the price bidden by the last purchaser shall be promptly paid without suit, which may save him from ruin by putting him in possession of the amount of his demand, but reduce the debtor to poverty and want by a sale of his property for less than the half, or even the fourth part of its real value. Hence it would seem to be expedient, at least, for the benefit of creditors, frequently, that resales should be made, when the price bidden at the sale is not paid, as it ought to be; and at the same time equally expedient, as also most just, in order to protect the interest of the defendant in the execution, as well as his other creditors, that the first or any prior purchaser should be held responsible to the sheriff for the difference between the price bidden by him and any less price for which the property shall be ultimately sold. That the sheriff may maintain an action to recover the whole amount of the purchase money in his own name, when he seeks to perfect and carry the sale into effect, is not denied, but admitted; and why? because the contract for the sale of the estate is made with him by the purchaser, and with him alone; and therefore it is that he or his representatives can alone maintain an

[Gaskell v. Morris.]

action for the breach of such contract. This being the case, then, why should he not have a like right, for a like reason, to hold a prior purchaser responsible to him for any loss that shall have arisen from a second or subsequent sale occasioned by his neglect or refusal to pay the purchase money bidden by him at the first or prior sale? The sheriff may very properly be considered as invested with a trust by law to sell the estate, which he has full power and is bound to perform, for the benefit not only of the creditors of the owner, but likewise for the owner himself; and in order to execute this trust for the benefit of all concerned, it is not only proper but necessary that he should have a like right to maintain such an action as the present, as if he were the legal owner of the estate.

The sixth error is, that the court left the fact of notice to the decision of the jury, without any evidence having been given in relation to it. This matter has been already sufficiently answered and disposed of in the discussion of the third error, and therefore requires nothing further to be said in regard to it.

The seventh and last error is an exception to the amount of damages recovered, which is alleged to be excessive. No such question as this appears to have been raised or made in the court below, neither does it appear that the court below gave the jury any direction in regard to it; so that there could be no exception to the charge of the court in this respect. Consequently, this court cannot take cognizance of it. If the fact were so, that the damages assessed by the jury were excessive, the only remedy for relief within the reach of the defendant below was an application to the court, before judgment rendered on the verdict, for a new trial. But if we were to judge of the amount of the damages from all that appears in the case, it would seem that the jury in assessing the same allowed merely the difference, with perhaps some interest thereon, between the first and second sales. And seeing that no reason whatever has been given why the defendant below did not comply with his contract for the purchase, it is clear, therefore, that by his failure to do so he has caused a loss, equal to this difference, to the owner of the estate, and upon every principle of justice ought to make it good.

Judgment affirmed.