## Schwartz's Estate.

1. The limitation, by the act of 24th February, 1834, of the lien of a decedent's debts to a period of five years, is extended to a period of ten years, by an action brought and judgment recovered against the personal representative alone, within the first period.

2. An action of debt, professedly based on the first judgment, but to which the heirs of the decedent are made parties, may be regarded as an original action, in which the parties are bound to set up every available defence, and a judgment recovered for want of a plea, will preclude them from afterwards averring payment before the second judgment, in a collateral proceeding.

3. The second action being brought within five years after the decedent's death, is of itself sufficient to continue the lien of his debts for the second period of five years.

4. A judgment creditor, who, as the agent of the widow, received rents to which she was entitled under the will of her husband, is not liable to account for them, by crediting them on his judgment.

5. A non-joinder of any of the heirs, must be taken advantage of by plea in abatement.

6. That a minor was *personally* summoned, constitutes no objection on the part of other defendants; and that the wife of the judgment creditor was not joined in the proceeding on the judgment, is not a ground of objection by the other heirs.

This was an appeal by Abraham Morrison, a judgment creditor of said estate, from a decree of the Orphans' Court of Allegheny county, made in relation to the distribution of the proceeds of sale of said estate.

George Schwartz, the decedent, died on or about the 26th day of February, A. D. 1838, having in his life-time made a last will and testament, dated 10th September, A. D. 1822, in which he devised and bequeathed all his estate, real and personal, to his wife Mary, for and during her natural life, but made no disposition of the same after her death, and appointed his wife sole executrix, in the following manner, to wit: I give and bequeath to my beloved wife, Mary Schwartz, all my estate, both real and personal, for and during her natural life; and I do hereby nominate and appoint her, my said wife, my whole and sole executrix of this, my will. Hereby revoking all former wills by me made, and declaring this to be my last will and testament. In witness whereof, &c.

The said will was duly proved after the said testator's death, and letters testamentary thereon granted to the said executrix. At the time of his death, the said George Schwartz was seized in fee, subject to a ground rent, of and in a certain lot of ground and house thereon erected, situate on Market street, in the city of Pittsburgh; and died, leaving a daughter *Mary*, then intermarried with Abraham Morrison, the appellant—a grand-son, George S. Schwartz, son of Josiah Schwartz, then deceased—a grand-daughter, Mary Schwartz, daughter of Horatio N. Schwartz, then de-

[Schwartz's Estate.]

ceased—the said George S. and Mary being then minors—and Mary his widow, as above stated.

On the 15th day of March, 1838, an amicable action *of debt* was entered in the *Common Pleas* of Allegheny county, No. 339, March T., 1838, and judgment therein confessed on the same day by Mary Schwartz, as executrix of George Schwartz, deceased, in favor of Abraham Morrison, the appellant, for the sum of nine hundred and ninety-four dollars, and costs of suit, &c.

On this judgment *an action of debt* was afterwards brought in the *District* Court of Allegheny county, in favor of Morrison *v.* Mary Schwartz, executrix, &c., Geo. S. Schwartz, a minor, Mary Schwartz, minor child of Horatio N. Schwartz, and McKeown, guardian of said Mary. The writ was issued Feb. 4, 1843, and returnable to the first Monday of March; and on the 17th day of March, 1843, judgment was entered for want of a plea, and the sum liquidated at $1292.50.—In January, 1845, assigned by Morrison.—December 12, 1846, re-assigned to him.

Mary Schwartz, the widow, not long after the death of her husband, appointed Eichbaum her attorney to collect all money due and owing to her, in her own right or as executrix, and to collect the rents above referred to, and went to reside with Morrison, and resided there till her death in December, 1845.

In January, 1846, petition of Morrison and wife was presented to the Orphans' Court of Allegheny county, praying the court to award an inquest to make partition of the said premises. They were appraised, Eichbaum was appointed trustee to sell, and he sold to Morrison for $5100. On 26th June, 1846, the sale was confirmed. On the 23d December, 1846, the court having granted leave to the trustee to file an additional return, *nunc pro tunc*, as an amendment of the return previously made, the trustee filed a return which stated, *inter alia*, that Morrison, the purchaser, was a lien creditor by virtue of the judgment hereinbefore referred to, and that he, (Eichbaum,) had taken the receipt of Morrison for $1538.93, the amount of the judgment, and interest thereon till the day of sale, and costs.

Exceptions to this supplemental return were filed, one of which was, that the judgment of Morrison was not, at the time of the sale, a lien on the said real estate; that it was not owned by Morrison at the time of the sale.

The matters in dispute were referred to an auditor. He reported, *inter alia*, that the judgment was had against the personal representative in the Court of Common Pleas, and on account of a change in the jurisdiction of that court as to amount, instead of a *scire facias* in the Court of Common Pleas, an action of debt was brought in the District Court against the executor and heirs; and that, though the mode of procedure is by *scire facias*, yet, as the same notice was served and the same opportunity for defence given

[Schwartz's Estate.]

which the *scire facias* would have furnished, as those of the heirs who were of age accepted notice of the writ, and the guardian appeared in court and acknowledged the same, and as there is no defence to the claim, other than the departure from the literal course intimated above, he decided in favor of sustaining the appropriation by the trustee to the judgment. He also reported that the judgment had been re-assigned to Morrison at the time at which the trustee made his return.

Exceptions were filed to the report of the auditor, some of which were that Morrison had received the amount of the judgment out of the rents, and received other moneys which should be credited on it. The auditor reported that the rents were received by Morrison for the widow.

Exceptions were filed to the report of the auditor.

The Court, PATTON, J., decided that Morrison was bound to proceed on his judgment by *scire facias;* that he had his original judgment in the Common Pleas, and if there was a doubt as to the jurisdiction of that court, he should have proceeded in time and transferred his judgment by certificate to the District Court. He decided also that the judgment was no lien on the interest of the wife of Morrison in the land sold, as she was not made a party to the proceeding upon it.

It was decreed that the judgment be stricken out of the account. From the decree, Morrison appealed.

Errors assigned :

1st. That the court erred in over-ruling the decision of the auditor, allowing the judgment of A. Morrison, the appellant.

2d. The court erred in deciding that the said judgment was not a lien on the said real estate, at the time of the sale thereof.

3d. The court erred in ordering and decreeing that the said judgment be stricken out of the account, and that the account be corrected accordingly.

The case was argued by *Williams* and *Kuhn* for appellant.

By *Woods* for appellee.

The opinion of the court was delivered by

BELL, J.—*Under* the construction of the acts of 4th April, 1797, and 24th February, 1834, as ascertained by Trevor *v.* Ellenberger, 2 *Penn. Rep.* 95 ; Penn *v.* Hamilton, 2 *Watts* 53 ; Duncan *v.* Clarke, 7 *Watts* 225 ; Benner *v.* Phillips, 9 *Watts & Serg.* 13 ; Bredin *v.* Agnew, 8 *Barr* 233 ; and Keenan *v.* Gibson, 9 *Barr* 249, it would result that the lien of the debt due to Morrison was continued in full vigor against the land devised, up to the date of its sale, simply by the legal operation of the action instituted against the executrix, and the judgment confessed therein, on the 15th of

March, 1838. The testator died on the 26th of February, 1838; consequently, the five years prescribed as the limitation of the common law lien, by the 24th section of the act of 1834, did not expire until February, 1843. But, according to the cases cited, the judgment recovered against the executrix extended the operation of the lien of the debt over an additional period of five years, the computation of which did not commence until immediately on the expiration of the first limitation of five years. This interpretation of the statutes, restraining the prior unlimited lien of decedent's debts, is distinctly announced by the three cases first cited; and though some general expressions made in the others, might seem to sanction the idea that the second period is to be computed from the rendition of the first judgment, in every instance, a careful examination of these adjudications will prove them to be in harmony, on this point, with the older decisions. The result is, that though the judgment against the personal representative of the deceased debtor was confessed in 1838, its effect was to continue the lien over a period of ten years from the death of the testator, and thus the creditor was in no danger of losing his grasp on the land until February, 1848. The non-joinder of the devisees, in the first action against the executrix, detracted nothing from the vigor of this extended lien; and Murphy's Appeal, 8 *Watts & Serg.* 165, approved in Atherton *v.* Atherton, 2 *Barr* 113, shows, that within the time which elapsed here, it is only necessary to call in the heirs or devisees of a decedent, in pursuance of the 34th section of the act, where the creditor proposes to take the land in execution, in payment of his debt. Where a sale is had under an order of the Orphans' Court, either for the payment of debts, or after proceedings in partition, the holder of the lien may call on the fund without a formal proceeding against the present holders of the estate. But, in that case, the latter are at liberty to impeach the validity of the claim, just as though no judgment had been recovered against the personal representative of the decedent. So far, therefore, as the mere continuation of lien is involved, the institution of the second action, in which the heirs were made parties, would seem to have been unnecessary. It is, consequently, immaterial to inquire whether the latter proceeding works the same legal effect as though a *scire facias* had regularly issued against the executrix and terre-tenants, in accordance with the practice sanctioned by our adjudications, in analogy with the process given by the act of 1798, for the revival of judgments *inter vivos.* In fact, in determining the respective rights of the parties litigant, the judgment of 1843 might, altogether, be put out of view, were it not for its legal operation, in circumscribing the limits within which inquiry is now permissible. In reference to this operation, the second suit may be properly regarded as a distinct and independent action, brought within five years from

[Schwartz's Estate.]

the death of the testator, and competent, *proprio vigore,* to pro-
long the lien of the original debt.   Though, technically, based on
the judgment rendered against the executrix alone, and professedly
with the intent of enforcing it, it is not to be doubted it brought
the owners of the land into court, and so afforded them an oppor-
tunity either to assail the regularity of the proceeding, or to set
up any defence in bar of the action, which could have availed them
in an original suit.   The authorities already adverted to, prove this
would have been their right, had the plaintiff proceeded by *scire
facias;* and it is certain a mere change in the form of the process
could not, possibly, work any change in the rights of the terre-
tenants.   Having thus a *status* in court, they were bound to an-
swer, either in abatement of the action, or by objecting matter in
bar of it.   Of the latter species of defence, the most obvious was,
perhaps, payment by the decedent, or by his executrix since his
death.   But the averment of satisfaction was wholly pretermitted.
The party who now avers it, was silent when he might have spoken
with effect.   By suffering judgment to pass for want of a plea, he
conceded he knew of none that could avail to defeat the plaintiff.
I have reference to Mr. McKeown, guardian of Mary Schwartz,
the only one who now offers to contest Morrison's claim, the other
party in interest, who is of full age, conceding the creditor's right
to recover.

What is the legal effect of the defendant's silence, and the judg-
ment consequent upon it?   Doubtless, to estop them from setting
up, collaterally, any pretermitted defence they might, at the proper
time, have averred.   Of these, I have already said, payment prior
to the rendition of the judgment is one.   But the judgment, of
itself, conclusively negatives such an allegation; and as it cannot
be, indirectly, impeached in another tribunal, no evidence of pay-
ment, prior to March, 1843, can be, properly, listened to.   If, in-
deed, the debt was satisfied before that time, the remedy *is by* an
application upon proper ground laid, to set the judgment aside, or
to open it for the purposes of a defence, *pro tanto,* an application
which can only be addressed to the tribunal before which the judg-
ment was recovered.   These remarks might, perhaps, be accepted
as a full answer to the allegation of payment; for I have failed to
discover any, the slightest proof of sums received by Morrison,
subsequent to March, 1843, sufficient to satisfy his judgment.
What moneys, if any, were paid to him after that date by Eich-
baum, the appellee has failed to show.   It was his business to show
it, and his omission to do so leaves him without ground to stand on.

But were the difficulties I have suggested as lying in the way of
the appellee, waived and full effect given to all the evidence intro-
duced to show payment, we do not perceive any thing in it suffi-
cient to establish the asserted fact.   With the exception of some
insignificant items of personal property belonging, and of some

[Schwartz's Estate.]

small debts due to the estate of the testator, the avails of which appear to have been applied in payment of his debts, the sums received by Eichbaum, and by him paid to Morrison, were the rents and avails of the estate devised to the executrix, as widow. But she was not compellable to account for these rents, as assets in her hands, applicable in payment of the debts of the estate. Even rents received by an executrix or administratrix, as such, are not regarded as assets, but are held in trust for the heir or devisee: McCoy *v.* Scott, 2 *Rawle* 222; Adams *v.* Adams, 4 *Watts* 160; and so long as the estate descended or devised remains unconverted, the profits paid to the owner belong to him absolutely, though he be, also, executor or administrator of the devisor or ancestor. Of the property from whence sprung the money received, Mrs. Schwartz was tenant for life by force of her late husband's will. Now, even upon a direct application of the remainder men, chancery would have coerced her no further than to the payment of the yearly interest of the burdens upon the estate. Here, it appears, she has done much more. If those in remainder were not satisfied with this, they should have applied to the proper Orphans' Court for a compulsory order to sell the land devised, in payment of the debts due. But they did not choose to take this course, and, indeed, it is suggested it would, in the end, have been less advantageous for them than that actually pursued. As, then, there existed no pretence for compelling an application of the rents and profits in discharge of Morrison's debt, how can the appellee claim that the money received by him, as the mere agent of the tenant for life, shall be charged against him in payment of his demand? Under the circumstances, he would not have been permitted to retain it, as against his principal, in satisfaction; and unless it be shown he actually did so, of course he is not liable to answer for imaginary values. He was the mere conduit-pipe, for the transmission of the fund from Eichbaum to the tenant for life, and in the absence of contrary proof, it is to be presumed the transmission was faithfully performed. If he retained any portion of it, it should have been shown. As agent, he was liable to account for the full amount received, and we must take it he did so account. Indeed, the recovery of a judgment for the value of this debt, so late as 1843, which until 1845, belonged, by transfer, to other persons, is pretty strong affirmative evidence of the fact. The irregularities pointed to as apparent on the face of the proceedings to April Term 1843, cannot be averred, collaterally, to defeat the legal effect of the judgment recovered. If the non-joinder of Mrs. Morrison, as one of the heirs of her late father, was objectionable, it should have been taken advantage of by plea in abatement, 2 *Saund. N.* 10, and the fact that George S. Schwartz was personally summoned, though a minor, constitutes no objection in the mouth of the other defendant, even on the concession that

[Schwartz's Estate.]

George himself might have made it an exception. But he appeared by guardian *ad litem*, and has ever since acquiesced in the validity of the proceeding. As to the non-joinder of Mrs. Morrison, it is in the power of the Orphans' Court to see that it inflicts no real injury upon the other parties in interest, and it appears, the auditor by his report, has sedulously guarded against such possibility.

There is, therefore, no room for regret that the appellee is precluded from, effectively, setting up the technical difficulties urged by him, and as he has shown none founded on the merits, which ought to bar the plaintiff of his debt, the decree of the Orphan's Court, denying the right, must be reversed.

And now, September 9, 1850, after hearing the parties and duly considering the same, It is ordered, that the decree of the said Orphan's Court, setting aside and disallowing the report of the said auditor, be reversed, and altogether annulled, and that the said report be confirmed. And it is further ordered, that legal interest up to this date be calculated upon, and added to, the balances found to be due from the said Morrison, and that he be charged with the aggregate sum so found to be due.

And now, October 11, 1850, It is ordered that the costs incurred in the said Orphans' Court, and in this court, be paid by the said Mary Schwartz out of the funds of her said ward.