<table>
<tr><td>90</td><td>89</td></tr>
<tr><td>126</td><td>101</td></tr>
<tr><td>90</td><td>89</td></tr>
<tr><td>161</td><td>91</td></tr>
<tr><td>90</td><td>89</td></tr>
<tr><td>171</td><td>402</td></tr>
<tr><td>90</td><td>8</td></tr>
<tr><td colspan="2">26 SC 143</td></tr>
<tr><td>90</td><td>89</td></tr>
<tr><td colspan="2">f41SC³182</td></tr>
</table>

# Reese *versus* Reese.

1. It is within the power of a court to make a rule, to allow an instrument to be admitted in evidence without proof of its execution, unless the opposite party give notice that he requires such proof to be produced.

2. Although parts of a charge when taken separately may seem to be erroneous and indicate a leaning to one side or the other, there is yet no error, if taken as a whole, the questions at issue are fairly left to the jury.

3. Where an expert acquires his knowledge of the handwriting of a person by simply observing him write several times, and this for the purpose of testifying, he is not competent to give an opinion as to the genuineness of that person's signature.

4. Where it is alleged and denied that the body and signature of an instrument are in the same handwriting, an expert may be asked whether, in his opinion, the two parts were written by the same person.

March 28th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

ERROR to the Court of Common Pleas of *Chester county :* Of January Term 1878, No. 302.

Debt by Margaret Reese against her son John Reese, on a note under seal for $993, drawn by defendant in favor of plaintiff.

[*Reese v.* Reese.]

The case was brought into the court below on an appeal from an award of arbitrators, who had awarded the plaintiff the sum of $1997.04. The defendant filed an affidavit of defence in which he averred that the note was never executed by him. He also pleaded *non est factum* and set-off.

At the trial, the defendant objected to the admission of the note in evidence, because no proof whatever had been offered of its execution by the defendant, whose plea of *non est factum* required such proof to be presented before said note can be read or received in evidence. The court overruled the objection on the ground that the defendant had not given notice of his intention to impeach the execution of the note, in accordance with the following rule of court: "In all cases where the plaintiff's cause of action or the defendant's set-off, is founded in whole, or in part, on any bond, note or other instrument in writing, and stated specially in the pleadings, on notice given, fifteen days before the first day of the term, at which the cause is set down for trial, the same may be given in evidence without proof of its execution, unless the opposite party shall, at least eight days before the first day of said term, give notice to the party offering such instrument, that he requires such proof to be produced."

The defendant testified that he had never made the note in suit; had never seen it, and never owed the money for which it was alleged to have been given. Several other witnesses testified that the plaintiff had stated in their presence that the defendant did not owe her anything.

The defendant proposed to ask E. H. Rauch, an expert, "In your judgment did the same hand execute the signature that executed the note?" The question was objected to, and the court sustained the objection.

The same, witness who had examined the handwriting of the defendant shown to him before the trial, with a view, as the witness supposed, of preparing for the trial, and who had never therefore seen the handwriting of the defendant, was asked whether in his opinion the signature to the note was in defendant's handwriting. Objected to, and objection sustained.

The plaintiff offered several witnesses in rebuttal, who testified they had seen the defendant sign the note. All of the note, except the signature, was admitted to be in a different handwriting from the signature.

In the general charge, the court, Butler, P. J., alluding to the evidence that plaintiff had stated that defendant did not owe her anything, inter alia, said:

"The question here is, whether this note was forged. If the old lady said John owes me nothing but on book account, what weight should this testimony have? What did she mean if she said that? Did she mean that John owed her nothing but on book account?

[Reese *v.* Reese.]

Did she mean that he had not given her the note? There is no pretence that he ever paid anything on it. Did she mean this claim arose out of book account? * * * You will look at the paper and judge whether it is a paper made since the conversation a year or months ago, or whether it is an old paper made years back. If that is so, then she could not have meant that she had no note at the time. [As she was talking to strangers, she was under no obligation to tell them the truth about her business.] If she did not mean to say she had not the note, did she mean to say the note she had was a forgery? Do people ordinarily confess when they have papers purporting to be made by others, but are not, that they are forgeries? Did she mean so to confess? You will say whether it is probable or not. If she made such statement before these witnesses, is it probable she would come here and swear to the contrary? She swears here that the note is due her; has never been paid. If she made the statement to these witnesses that they understood her to make, as the defendant construes it, that the note is a forgery, it is inconsistent with her attitude since and here. If willing to make such confessions then, why not do so still? Her son John, it may be inferred, is as near to her now as then, and if she made such confessions in his favor then, why change her position? I only suggest these thoughts; they arise naturally out of the evidence, and must be considered by you in reaching a correct conclusion. They are for you entirely. In respect to them the court does not mean to bias your minds in the least.

"You will say what weight should be attached to Mr. Rauch's testimony. He says, I doubt whether this signature to the note is a natural signature; I am inclined to believe it is simulated. This witness does not know the handwriting of defendant, and therefore cannot testify whether this is his handwriting or not. He is an intelligent man, and if familiar with the handwriting of the defendant he might have given valuable testimony; but, unfortunately, he knows nothing of his handwriting. * * * Is that testimony of any value at all? He never saw the man write; he does not base his judgment on that. Looking at the signature without knowing anything about the signature of the man, he says, I doubt whether it is a natural hand; I incline to believe it is simulated. [I say to you, that to such testimony, in my judgment, little weight should be attached.] * * * The case presents questions of fact only; they are entirely for you to determine. You will consider them with care. * * * I submit the case to you."

Verdict for plaintiff for $1511.20. The defendant took this writ and assigned for error the admission of the note without proof of its execution, the exclusion of the above evidence offered by defendant and the foregoing portions of the charge in brackets.

[Reese v. Reese.]

*Charles H. Pennypacker*, for the plaintiff in error.—The plea was *non est factum.* The rule of court provided for notice. That notice was given by the affidavit of defence. The construction of the rule by the court worked injustice to John Reese, and the Supreme Court has the power to revise and correct such error: Sterling *v* Ritchey, 17 S. & R. 263; Magill's Appeal, 9 P. F. Smith 430; Brennan's Estate, 15 Id. 16.

The testimony of experts that the whole of an instrument was written by the same hand, is receivable: Fulton *v.* Hood, 10 Casey 370; Burkholder *v.* Plank, 19 P. F. Smith 225: Ballentine *v.* White, 27 Id. 26.

The plaintiff's declaration to three disinterested witnesses repelled the idea that she had any claim upon any note against her son. And yet the court below uses this remarkable language to the jury: "As she was talking to strangers, she was under no obligation to tell them the truth about her business." This was manifestly erroneous.

*H. H. Gilkyson* and *William B. Waddell*, for defendant in error.—A failure to enforce the rule, in this instance, would have taken the plaintiff by surprise, and worked injustice to Margaret Reese, and, if disregarded by the court, would have been such an error as the Supreme Court would have revised and corrected: Brennan's Estate, 15 P. F. Smith 16.

The court had power to make such a rule of practice, not being in violation of law, and the extent and application of the same were properly decided by the court below. The Supreme Court will not interfere in the construction of the rules of practice: Snyder *v.* Bauchman, 8 S. & R. 336; Rundel *v.* Keeler, 7 Watts 237; Frank *v.* Colhoun, 9 P. F. Smith 381; Coleman *v.* Nantz, 13 Id. 178; Carey *v.* Commonwealth, 4 Brewst. 62; Andrews *v.* Bank of Titusville, 23 Pitts. L. J. 133.

A comparison of handwriting is only permitted when the paper sought to be made the test or standard has been established by positive testimony, as the authentic and genuine handwriting of the same party: McCorkle *v.* Binns, 5 Binn. 348; The Farmers' Bank *v.* Whitehill, 10 S. & R. 110; Lodge *v.* Pipher, 11 Id. 334; Baker *v.* Haines, 6 Whart. 291; Travis *v.* Brown, 7 Wright 9; Aumick *v.* Mitchell, 1 Norris 211.

The recognised rule in the discussion of evidence permits a judge in charging the jury, to express an opinion upon the facts in the case, and the weight of the evidence, provided the facts be not withdrawn from the jury: Williams *v.* Carr, 1 Rawle 420; Ditmars *v.* Commonwealth, 11 Wright 335; Mohoney *v.* Evans, 1 P. F. Smith 84; Ralston *v.* Groff, 5 Id. 278; Burke *v.* Maxwell's Admrs., 31 Id. 139.

[Reese *v.* Reese.]

Mr. Justice Trunkey delivered the opinion of the court, May 5th 1879.

The rule is within the power of the court to make, and filing an affidavit of defence is not the requisite notice to put a party to proof of execution of the writing. There can be nothing in the allegation that "the construction of the rule by the court worked injustice to John Reese;" nor was it a favor to Margaret Reese. The first witness called by the latter testified that she saw the former sign his name to the note. With that witness present, both parties having knowledge of what she would say, the whole contention would seem to have been to obtain a construction of the rule; and we are not convinced that there was error or hardship in the interpretation. It would be an extreme case which would require reversal, because of error in admitting a writing without preliminary proof of signature, when, in a subsequent stage of the trial, positive evidence was given of its execution: Hannay *v.* Stewart, 6 Watts 487 ; Gaskell *v.* Morris, 7 W. & S. 32.

The last four assignments are to portions of the charge. By themselves, some of these seem erroneous; but are not, taken with the context. For instance, the sentence : "As she was talking to strangers, she was under no obligation to tell them the truth about her business," is in the midst of remarks of which the judge says : "I only suggest these thoughts; they arise naturally out of the evidence, and must be considered by you in reaching a correct conclusion. They are for you entirely. In respect to them the court does not mean to bias your minds in the least." Again, the subject of the eighth assignment is not "relative to the testimony of experts," but to the particular testimony of the witness, quoted immediately preceding the alleged erroneous words. The jury were expressly told that it was for them to say what weight should be attached to the testimony of the expert, Mr. Rauch. Although the charge as a whole very decidedly exhibits the learned judge's opinion in favor of the plaintiff, supported by able argument, it is not assigned that the jury were misled thereby. He submitted every question to the jury, saying in conclusion : "The case presents questions of fact only ; they are entirely for you to determine."

Rauch, while waiting as a witness for John Reese, saw him write several times—he wrote at request of his counsel. From knowledge of Reese's handwriting, thus acquired, the witness was incompetent to testify his belief as to the genuineness of the signature in question. It has never been the practice in Pennsylvania to permit a witness to give an opinion when taught in that manner. In Stranger *v.* Searle, 1 Esp. 14, the witness had seen the defendant write his name several times, previous to the trial, for the purpose of showing to the witness his true manner of writing; Lord Kenyon rejected the testimony, saying : "The defendant might

[Reese *v.* Reese.]

write differently from his common mode of writing his name, through design."

The only error appearing is the overruling an offer to prove by an expert whether, in his judgment, the body of the note and signature were written by the same hand. "It was ruled in Fulton *v.* Hood et al., 10 Casey 365, that the testimony of experts is receivable, in corroboration of positive evidence, to prove that in their opinion the whole of an instrument was written by the same hand, with the same pen and ink, and at the same time. This case indeed is the converse of that, but the principle is undoubtedly the same, whether the evidence is of experts to attack or support the instrument:" per SHARSWOOD, J., Ballentine *v.* White, 27 P. F. Smith 20. John Reese had previously testified that he did not sign the note. Confessedly, he did not write the body of it. When one party alleges the body and signature were written by the same hand, and the other the contrary, what can be more clearly admissible than testimony of one so skilled as to be able to determine the point by inspection? Just here, if anywhere, is the testimony of an expert competent and valuable. It is certainly true that the positive declaration of a witness that she saw the party write his name, if believed, cannot be overcome by the opinion of an expert; nor can it by any other kind of evidence. Peradventure, such declaration may not be credited by the jury, and, therefore, evidence pertinent to the issue, shall not be rejected by the court.

Judgment reversed, and a *venire facias de novo* awarded.